Thomas **PALERMO** and Sheldon Saltzman, Plaintiffs,

v.

Nelson A. **ROCKEFELLER**, Russell Oswald, E. K. Jones, John Doe, Richard Roe (Parole Board Commissioners), Thomas Mackell, Fred Ludwig, Thomas Demaskos, Arthur A. Darrigrand, John A. Braistead, Mr. Ralph DiIorio, Peter T. Farrell, Michael Kern, John V. Lindsay, Howard Leary, John O'Connors, Norman Rein, Esq., Jacob Esveroff, Esq., the Provident Loan Society, the State of New York, the City of New York, Defendants.

No. 70 Civ. 3705.

United States District Court, S. D. New York.

Jan. 15, 1971.

Thomas Palermo, pro se.

Sheldon Saltzman, pro se.

Louis J. Lefkowitz, Atty. Gen. of the State of New York, New York City, for defendants Rockefeller, Oswald, Doe, Roe, Mackell, Ludwig, Demaskos, Darrigrand, Braistead, DiIorio, Farrell, Kern and State of New York; Stephen P. Seligman and Frank I. Strom, II, Deputy Asst. Atty. Gen., of counsel.

J. Lee Rankin, Corp. Counsel, New York City, for defendants Lindsay, Leary, O'Connors and City of New York; John Wellekens, New York City, of counsel.

Rein, Mound & Cotton, New York City, for defendants Norman S. Rein and Rein, Mound & Cotton; Eugene A. Leiman, and James S. Rowen, New York City, of counsel.

DeForest & Duer, New York City, for defendant Provident Loan Society of New York.

MANSFIELD, District Judge.

This action brought under 42 U.S.C. §§ 1983 and 1985 and 28 U.S.C. § 1343(3) and (4) involves alleged non-compliance with the terms of an elaborate agreement allegedly worked out between plaintiffs, who are now incarcerated at Sing Sing Prison, and defendants, all of whom are alleged to have been either directly or indirectly connected with the agreement.

On February 17, 1969, when plaintiffs were scheduled to appear for trial in the New York Supreme Court for Richmond County on charges of robbery and grand larceny, a robbery was committed in Queens County in which 2,000 pieces of jewelry valued at approximately $4,000,-000 were taken from the Provident Loan Society of New York ("Provident"). On June 11, 1969, a grand jury in Queens County indicted plaintiffs for the Provident robbery. On June 27, 1969, plaintiffs were convicted by a jury in Richmond County of robbery in the first degree, convictions based on incidents unrelated to the Provident robbery. Plaintiff Palermo was sentenced to imprisonment of 25 years on the robbery count and 7 years on the larceny charge; plaintiff Saltzman was sentenced to 15 years and 5 years on the corresponding counts. All of the sentences were to run concurrently.

In an effort to recover the jewelry taken in the Provident robbery, negotiations were conducted, beginning during the Richmond County trial, between the District Attorney for Queens County, Thomas J. Mackell ("Mackell"), and plaintiffs who were represented by their attorney, Jacob R. Esveroff ("Esveroff"). It also appears that a representative of the New York City Police Department, Mr. John O'Connors ("O'Connors"), and an attorney for Provident, Norman Rein ("Rein"), were present at and participated in the negotiations to some extent. After some deliberation, plaintiffs agreed to procure the return of the proceeds of the Provident robbery and to plead guilty to the charges against them arising from it. Mackell agreed to

appear at plaintiffs' sentencing on the foregoing guilty pleas in Queens County Court, to intercede on behalf of plaintiffs with the New York State Parole Board ("Parole Board") in an effort to secure plaintiffs' release on parole after 18 months of their Richmond County sentences had been served, to move to dismiss an assault charge then pending against Palermo in Queens County, and to request the District Attorney of Oneida County to drop charges against plaintiffs relating to possession of a stolen automobile. Mackell rejected plaintiffs' request for a reward of up to $100,-000 for return of the jewelry, but the other elements of the agreement were substantially as requested by plaintiffs through their attorney.

On or about October 24, 1969, most of the proceeds of the Provident robbery were returned to Mackell's representatives. On April 16, 1970, plaintiffs pleaded guilty to the crime of robbery in the third degree in Supreme Court, Queens County, in connection with the Provident robbery. On April 24, 1970, Mackell wrote to the Parole Board requesting consideration for plaintiffs on their Richmond County sentences. This letter appears to have been unavailing, however, as the Parole Board denied plaintiffs' application for release on parole. Mackell also communicated with the Oneida County District Attorney regarding the charge of possession of a stolen motor vehicle. That charge is still pending against plaintiffs. On September 30, 1970, an Assistant District Attorney appeared in Queens County Supreme Court, in which plaintiffs were to be sentenced upon their guilty pleas, to inform the sentencing judge that the proceeds of the robbery had been returned. At that time, Palermo moved to withdraw his plea of guilty because he had not been paroled as scheduled on August 17, 1970. The sentencing of both plaintiffs for their part in the Provident robbery was adjourned pending the determination of Palermo's motion. Hearings on the motion are now in progress in Queens County Supreme Court.

On August 25, 1970, plaintiffs commenced this action against numerous defendants alleging non-compliance with the agreement described above. They now seek unconditional release from custody, an injunction against the initiation or continuance of further prosecutions against them, an order for return of the jewelry which they returned to Provident, damages in the amount of $1,000,-000 plus $25 for each day spent in custody beyond August 17, 1970, the date at which they allege they were to be released pursuant to the agreement, and reimbursement for the costs of prosecuting the action.

We deal now with motions made on behalf of each of the 22 defendants to dismiss the action. We shall deal with the motions of the defendants as they fall into the following categories, and in the following order: (1) the State of New York and the City of New York, (2) New York Supreme Court Justices Kern and Farrell, (3) Mayor Lindsay, former Police Commissioner Leary, and Governor Rockefeller, (4) attorneys Esveroff, Rein, and the firm of Rein, Mound & Cotton, (5) Provident, (6) defendant Darrigrand, Oneida County District Attorney, (7) various Parole Board officials, (8) various District Attorneys and their assistants in Richmond and Queens Counties, and (9) O'Connor.

Section 1983 provides a federal remedy for the actions of "persons." It is settled law that a state is not a person within the meaning of this section. Fear v. Commonwealth of Pennsylvania, 413 F. 2d 88 (3d Cir. 1969); Israel v. City Rent and Rehabilitation Administration of City of New York, 285 F.Supp. 908 (S.D. N.Y.1968). The complaint is therefore dismissed as to the State of New York.

As to the defendant City of New York, the mandate of the Supreme Court is equally clear. "The response of the Congress to the proposal to make municipalities liable for certain actions being brought within federal purview by [§ 1983] was so antagonistic that we cannot believe that the word 'person' was used in this particular Act to include

them." Monroe v. Pape, 365 U.S. 167, 191, 81 S.Ct. 473, 486, 5 L.Ed.2d 492 (1961) (footnote omitted). Fisher v. City of New York, 312 F.2d 890 (2d Cir.), cert. denied, 374 U.S. 828, 83 S.Ct. 1866, 10 L.Ed.2d 1051 (1963). Although this seemingly definitive pronouncement may not bar a suit when only injunctive relief is sought, Schnell v. City of Chicago, 407 F.2d 1084, 1086 (7th Cir. 1969); Adams v. City of Park Ridge, 293 F.2d 585 (7th Cir. 1961), and plaintiffs in this case seek an injunction among other things [Compl. ¶ 2(b)], plaintiffs primarily seek damages, recission, or specific performance of the agreement: the only form of injunctive relief which might issue against the City would be an injunction restraining further participation of its employees and agents in this and other plea negotiations, or perhaps merely restraining further breaches of agreements reached in such negotiations. Viewing the allegations in the complaint in a light most favorable to plaintiffs, it appears that the only agent of the City who was directly involved in the agreement to any extent was defendant O'Connors, who participated in the discussions leading to the agreement, personally received the jewelry, and then conveyed the jewels to Provident. It is not alleged that O'Connors has failed to comply with any promises that he may allegedly have made to plaintiffs. On these facts, an injunction against the City is unwarranted. The action against the City is therefore dismissed in all respects.

We next consider the allegations concerning Michael Kern and Peter T. Farrell, Justices of the Supreme Court of the State of New York. These allegations relate to the part which Justice Kern played in negotiations regarding the Provident robbery, consisting of discussions before trial in Richmond County, during trial, and prior to sentencing there. Compl. ¶ 5(a) and (b). Plaintiffs allege that references to those conferences are to be found in the trial minutes of the Richmond County case, Compl. ¶ 5(c), which are not now before us. It

**482**

is alleged that plaintiffs were offered a maximum sentence of five years in the Richmond County matter if they would arrange for the return of the jewels, Compl. ¶ 5(d), and that plaintiffs were told that they would never be paroled if they did not arrange for the return of the jewels, Compl. ¶ 5(d), but these assertions are not attributed directly to either Judge Kern or Judge Farrell. The complaint, indeed, does not even allege that Judge Farrell participated in the plea negotiations.

■ Section 1983 did not abolish the common law immunity of judges.

"It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision-making but to intimidation." Pierson v. Ray, 386 U.S. 547, 554, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967).

A judge is immune from suits, at least those seeking damages and not injunctive relief, cf. Law Students Civil Rights Research Council, Inc. v. Wadmond, 299 F.Supp. 117, 123 (S.D.N.Y.1969), arising from the performance of his duties as long as he is acting within the judicial role on matters that are within his jurisdiction, Bradford Audio Corp. v. Pious, 392 F.2d 67, 73 (2d Cir. 1968); Fanale v. Sheehy, 385 F.2d 866 (2d Cir. 1967).

Since the criminal proceedings brought against plaintiffs in Richmond and Queens Counties were clearly within the jurisdiction of Justices Kern and Farrell, we need deal only with the question of whether the actions of these judges, assuming for purposes of the motion to dismiss that the allegations concerning their actions are true, departed sufficiently from the judicial role to justify

depriving them of immunity, cf. Brown v. Dunne, 409 F.2d 341, 343 (7th Cir. 1969), clarifying Spires v. Bottorff, 317 F.2d 273 (7th Cir. 1963).

The Canons of Judicial Ethics, Canon 4 ("Avoidance of Impropriety"), has been construed to caution strongly against the direct involvement of judges in arranging guilty pleas:

"A judge should not be a party to advance arrangements for the determination of sentence, whether as a result of a guilty plea or a finding of guilt based on proof." American Bar Association, Opinions on Professional Ethics 202 (1967) (Informal Opinion No. 779).

Cf. United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244, 255 (S.D.N.Y. 1966). Such involvement tends to demean the role of the court and can lead to unfairness or even to acceptance of a plea of guilty to a crime for which the defendant may not in fact be guilty.

There has been an increasing tendency, however, toward official recognition of the fact that plea negotiations between the prosecuting attorney and defense counsel are widespread and that they can facilitate the administration of justice under certain conditions. See, e. g., American Bar Association Project on Minimum Standards for Criminal Justice, Pleas of Guilty, Tentative Draft, pp. 10–12 (Part III, Plea Discussions and Plea Agreements). For instance, The Advisory Committee on Federal Rules of Criminal Procedure has recently recommended the amendment of Rule 11, F.R. Cr.P. to permit the court to accept or reject a negotiated plea presented to it by counsel, provided the agreement is spread on the record and the court reserves the right to reconsider its acceptance if it later finds that the pre-sentence report contains information inconsistent with that disclosed by the parties at the time of the plea. In the latter event the defendant's not guilty plea is reinstated and the record of the plea negotiation and presentation is inadmissible at trial.

Some states would go even further in permitting the court to become involved in plea agreements. A revised rule recently proposed to the Supreme Court of Illinois would, for instance, permit the trial judge to participate in discussion of the plea agreement at the request of the defendant, Proposed Rule 402(d) (1) ("Pleas of Guilty"). The Illinois Committee Comments to the Proposed Rule, dated January 16, 1970, indicate that the Committee believes that there is no reason for prohibiting such participation when both the defendant and the judge consent.

██ In light of the potential which plea agreements have for enhancing the efficiency of the criminal process, a particularly important consideration in a time of long dockets and serious delays of trial, we cannot say that participation of a trial judge in plea negotiations is a *per se* departure from the judicial role in which a judge is immune from suit, cf. United States ex rel. Rosa v. Follette, 395 F.2d 721 (2d Cir. 1968). Moreover, viewing the facts as alleged in the complaint it does not appear that plaintiffs have been damaged by any acts of these two defendants stemming from their alleged participation in negotiations leading to the agreement. There is no allegation, for example, that either judge made promises concerning the imposition of a five-year sentence in the Richmond County matter. Therefore, the action against defendants Kern and Farrell is dismissed since they are immune from suit on the facts alleged.

██ Plaintiffs further allege (1) that as Mayor of the City of New York and former Commissioner of its Police Department defendants Lindsay and Leary are vicariously liable under § 1983 for the actions of their agent, police officer O'Connors, Compl. ¶ 5, and (2) that plaintiffs were told that Lindsay, Leary, and defendant Rockefeller were members of the Board of Directors of Provident and had sanctioned the agreement, "leading plaintiffs to believe that contract was valid" [Compl. ¶ 5(h)]. Rockefeller's alleged connection with Provident appears to be plaintiffs' only claim for relief against him. In the absence of any allegation that these three defendants took affirmative action of any kind in connection with the agreement, plaintiffs' contentions, apparently founded solely on the theory of respondeat superior are too thin to sustain a claim for relief against Lindsay, Leary, and Rockefeller. Salazer v. Dowd, 256 F.Supp. 220 (D.Colo.1966); Jordan v. Kelly, 223 F. Supp. 731 (W.D.Mo.1963).

Esveroff was counsel to Palermo but not to Saltzman in the Richmond County trial. His alleged association with the negotiations leading to the agreement was limited to discussions of the Queens County robbery with representatives of the Police Department, the Richmond County District Attorney's office, and Justice Kern [Compl. ¶ 5(a)]. Palermo discharged him as counsel after Palermo had been convicted in the Richmond County trial but before he was sentenced there. (Esveroff Aff. p. 1). Rein and his firm represented Provident in the negotiations which led to the agreement (Bobick Aff. p. 1). Provident was undisputedly the victim of the robbery.

██ Federal jurisdiction under 42 U.S.C. § 1983 does not extend to all controversies between individual citizens, but only to deprivations of constitutional rights arising from the actions of persons acting under color of state law, Monroe v. Pape, 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961); United States v. Classic, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). Since Esveroff, Rein and Provident were not acting under color of state law, jurisdiction under § 1983 is not properly invoked. Brown v. Dunne, 409 F.2d 341 (7th Cir. 1969); Rhodes v. Mayer, 225 F.Supp. 80, 93–94 (D.Neb.1963), affd., 334 F.2d 709 (8th Cir. 1964), cert. denied, 379 U.S. 915, 85 S.Ct. 263, 13 L.Ed. 2d 186; Pugliano v. Staziak, 231 F.Supp. 347, 351 n. 5 (W.D.Pa.1964), affd. per curiam, 345 F.2d 797 (3d Cir. 1965); Jackson v. Hader, 271 F.Supp. 990 (W.

D.Mo.1967); Pritt v. Johnson, 264 F. Supp. 167 (M.D.Pa.1967); Kregger v. Posner, 248 F.Supp. 804, 806 (E.D.Mich. 1966). The motion of Esveroff, Rein and Provident for dismissal are therefore granted.

District Attorney Darrigrand of Oneida County is not alleged to have entered into any agreement with plaintiffs regarding the criminal charge that was pending against them in his county; it is only alleged that certain other defendants would see to it that the charge was dropped (Bobick Aff. p. 1). Darrigrand's failure to drop the charge thus does not give plaintiffs a claim for relief against him, and as to him, the complaint is dismissed.

The portions of the complaint relating to defendants Oswald, Jones, Doe and Roe (the latter two being members of the Parole Board whose names are unknown to plaintiffs) are as follows:

"g) Plaintiffs were made to believe by Edward Bobick, Esq., and by certain other Respondents that conversations had been held between those Respondents and Respondents Oswald, Jones and other members of the New York State Parole Commission and that said Oswald, et al, stated that Plaintiffs would never be paroled at any time, in any case in New York State unless alleged proceeds of the alleged Queens crime were recovered and further, that if proceeds were recovered through Plaintiffs efforts, Plaintiffs would be paroled after serving 18 months of their sentence." (Compl. ¶ 5(g))

"9) That contract was not fulfilled by Respondents in that Plaintiffs were not released on parole on 17 August 1970 which was the termination date of the 18 month period." (Compl. ¶ 9)

■ Members of the Parole Board act under color of state law and thus may be sued under § 1983 for deprivations of constitutional rights. Although we recognize that in the usual case their decisions require a special competence quite unlike that appropriate in an adversary setting, Menechino v. Oswald, 430 F.2d 403 (2d Cir. 1970), and their discretionary judgment should not be lightly overturned by a court, parole boards are not immune from suit, United States ex rel. Campbell v. Pate, 401 F.2d 55 (7th Cir. 1968), and when a clear-out deprivation of constitutional rights is alleged, we must assume jurisdiction and, if the claim is proved, not hesitate to act. When a parole board abandons its statutory duty to make its decision on the basis of an independent judgment as to whether release of the prisoner will be in the best interests of the individual and of society, N.Y. Correction Law, McKinney's Consol.Laws, c. 43, §§ 210, 213, in order to further some other goal, as is alleged here, it no longer acts within the prescribed scope of its duties or according to the procedures which it is by law required to follow, and it cannot expect the same measure of deference from the courts.

■ In this case, taking plaintiffs allegations as true, we find that they have stated a claim upon which, assuming it were proved, relief could be granted under § 1983 against the Parole Board. They allege that, prior to entering into an agreement pursuant to which they entered guilty pleas and gave up their right to a jury trial, direct promises were made by the Parole Board to their attorney that, in exchange for plaintiffs' pleas and for the return of stolen property, they would be released on parole after serving 18 months of their sentences. Following this alleged agreement, the Parole Board refused to grant plaintiffs release on parole at the promised time. Proof of such facts would establish a violation of plaintiffs' Due Process rights. While a plea of guilty, if voluntarily and knowingly made, may not be challenged on grounds which relate to the motivation for the plea, North Carolina v. Alford, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970) (desire to avoid a possible death penalty); McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970)

(unavailability of constitutional procedures for testing the admissibility of defendant's pretrial statements), it is a fundamental prerequisite of the plea negotiation process that the representations made to the defendant be accurate, and that promises made to him be kept, United States ex rel. Elksnis v. Gilligan, 256 F.Supp. 244 (S.D.N.Y.1966). The present case is not one in which a defendant who has had the benefit of a plea agreement later seeks to withdraw his guilty plea, cf. Shelton v. United States, 246 F.2d 571 (5th Cir. 1957), but one in which it is alleged that the defendant has kept his part of the agreement and the state has not, cf. United States ex rel. McGrath v. LaVallee, 319 F.2d 308 (2d Cir. 1963), 348 F.2d 373 (2d Cir. 1965); United States ex rel. Elksnis v. Gilligan, *supra*. In this respect, Parole Board members, whose decisions can have such a significant impact on the length of time an individual spends in actual custody, are subject to the same standards of fair play that apply to judges when they participate in plea negotiations. In what we assume to be the rare situation in which they promise release on a certain date, as is alleged here, they cannot breach such a promise with impunity, cf. United States ex rel. Elksnis v. Gilligan, *supra*.

■■■■ Turning to the defendants who were intimately involved in the negotiations leading up to the agreement— District Attorneys for Queens and Richmond Counties (Mackell and Braistead) and Various Assistant District Attorneys (Ludwig, DiIorio, Demaskos)— plaintiffs claim generally that they failed to fulfill the plea agreement. Ordinarily, prosecutors acting in their official capacity are entitled to immunity from civil suits, including actions under the Civil Rights Act, based on non-malicious conduct in their official capacities and within their jurisdiction. Scolnick v. Lefkowitz, 329 F.2d 716 (2d Cir.), cert. denied, 379 U.S. 825, 85 S.Ct. 49, 13 L.Ed.2d 35 (1964); Simons v. O'Connor, 187 F.Supp. 702, 704 (S.D. N.Y.1960). Public policy protects them

against such suits, which might dampen their fervor and inhibit them from zealous performance of their duties. If it were alleged that these prosecutorial defendants had entered into the alleged agreement with knowledge that the agreement would in all probability not be performed, we would be inclined to uphold the complaint on the ground that no compelling justification exists for cloaking them with immunity, since plea agreements touch at the heart of such liberties as are embodied in the presumption of innocence and the right to a jury trial, and public policy accordingly dictates that the conduct of officials entering into such agreements be measured by a high standard of honor, faithfulness and respect for constitutional rights. But see, e. g., Gregoire v. Biddle, 177 F.2d 579 (2d Cir. 1949). The present complaint, however, is limited to a general charge that the defendants failed to fulfill the commitments made, a failure that could have occurred even though they used reasonable diligence, since the power to grant parole rested with the Parole Board and not with the prosecutorial defendants. These allegations are insufficient to pierce the cloak of immunity. Accordingly the complaint is dismissed as to the defendants Mackell, Ludwig, Demaskos, Braistead and DiIorio.

■■■■ As a member of the Police Department, defendant O'Connors, if the charges against him were proved, could be held liable under § 1983 for violation of plaintiffs' constitutional rights, Monroe v. Pape, *supra*, and he is not protected by the immunity extended to members of the judiciary and public prosecutors.

Plaintiffs have painted their demands for relief with the same broad brush that was used in naming defendants: they seek release from prison, an injunction against further state prosecution (at least as to offenses and charges which were involved in the agreement), return to them of the jewels, damages, etc. In effect, they are asking for the benefits of the agreement which they

have not received (i. e., specific performance) or recovery of the rights and property which they gave up in hopes of obtaining those benefits (i. e., recision). Because issues as to the propriety of certain forms of relief were raised in defendants' briefs, we now take up the elements of relief requested in the complaint.

 We do not believe that plaintiffs are entitled to return of the jewelry under any circumstances. While the complaint refers repeatedly to the Provident robbery as an "alleged" robbery [Compl. ¶¶ 4, 5(b), 5(e), 5(f), and 5(j)], plaintiffs admit that at the very least they made contact with "the actual robbers" in order to secure return of the jewelry to Provident [Compl. ¶ 6]. Thus we give no weight to the contradictory assertion found in the following paragraph [Compl. ¶ 7] that ownership of the jewelry was vested in plaintiffs because proof was never made in court that the jewelry had been stolen. As stolen goods, the jewels were not the property of plaintiffs, and under New York law they are not entitled to employ legal process to recover them, McConnell v. Commonwealth Pictures Corp., 7 N.Y. 2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960); Carr v. Hoy, 2 N.Y.2d 185, 158 N.Y.S.2d 572, 139 N.E.2d 531 (1957).

In light of the foregoing, a complete recision, leaving the parties in the *status quo ante* which prevailed before the agreement, is not possible. Assuming plaintiffs proved their claims, we would be faced with the question of whether they should be limited to partial recision (that is, withdrawal of their guilty plea and perhaps damages) or, in view of the unavailability of complete recision, whether they would be entitled to an order directing the remaining defendants to comply fully with their part of the agreement. In the latter case, as defendants point out, we would be forced to consider whether adequate reason existed for abandoning the traditional reluctance of federal courts to enjoin pending state prosecution, compare Douglas v. City of Jeanette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943) with Dombrowski v. Pfister, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965). However, any attempt at this time to resolve the entire question of what relief plaintiffs may finally be entitled to should they prevail would be premature.

On the eve of our filing the foregoing we received a letter dated January 4, 1971, from plaintiff Palermo indicating doubt as to the sufficiency of his complaint and requesting a 30 to 60 day continuance to enable him to amend or modify his claims. Since defendants' motions to dismiss were submitted for disposition more than two months ago and it appears that no valid claim for relief under § 1983 could in any event be stated against certain defendants, we grant the motions to dismiss as to defendants State of New York, City of New York, Kern, Farrell, Lindsay, Leary, Rockefeller, Esveroff, Rein, Rein, Mound & Cotton, Provident, Darrigrand, Mackell, Ludwig, Demaskos, Braistead and DiIorio without prejudice to plaintiffs' filing an amended complaint within 30 days against such defendants, if any, as to whom plaintiffs are advised, after consultation with their legal counsel, that a valid claim for relief can be stated. The motions of defendants Oswald, Jones, Doe, Roe and O'Connors to dismiss the claims against them are hereby denied.

It is so ordered.