James **MARTIN** et al., Plaintiffs,

v.

Mario **MEROLA**, District Attorney, Bronx County, et al., Defendants.

No. 74 Civ. 4453–CLB.

United States District Court, S. D. New York.

Jan. 23, 1975.

Rothblatt, Rothblatt, Seijas & Peskin by Andrew P. Zweben, New York City, for plaintiffs.

Mario Merola, Dist. Atty., Bronx County, N.Y., by Robert M. Cohen, Asst. Dist. Atty., for defendants Merola, Darcy and Chesler.

## MEMORANDUM AND ORDER

BRIEANT, District Judge.

Defendants Merola, Darcy and Chesler have moved to dismiss the complaint herein pursuant to Rule 12(b)(6), F.R. Civ.P. for failure to state a claim. The Court has read affidavits and exhibits submitted by both sides of the litigation, and treats the motion as having been made under Rule 56.

Movants were at all relevant times, respectively, the District Attorney of Bronx County, New York, and Assistant District Attorney in his office, and an "as yet unadmitted law school graduate" employed in his office under the job title of "Criminal Law Investigator", who will become an Assistant District Attorney automatically when admitted to the bar, performing the same duties as an Assistant until such date. Other named defendants, not joining in this motion, are detectives or police officers of the City of New York.

Plaintiffs seek damages of Thirteen Million ($13,000,000.00) Dollars from defendants for "flagrant, wanton and malicious disregard" of plaintiffs' constitutional rights, and found jurisdiction on 42 U.S.C. § 1983.

Plaintiffs are six persons charged in various indictments presently pending in the courts of New York State, Bronx County, with serious crimes of the sort ordinarily associated with what is called, euphemistically, "Organized Crime".

Included in the indictments are counts of criminal usury, conspiracy, tampering with a witness, and felony possession of a weapon.

While an attorney's affidavit carries very little weight on a motion of this kind, we take as true for purposes of this motion, the "affirmation" of Andrew P. Zweben, dated November 29, 1974, read in opposition to the motion.

■ Plaintiffs allege that they were indicted, that the indictments were sealed and warrants issued, that they were not given an opportunity to surrender, although they had asked for an "opportunity to do so" through their attorneys (Complaint, ¶ 3). This is a frivolous allegation, because surrender pursuant to a warrant is a unilateral act, which can be accomplished merely by turning up at any precinct and asking to be arrested and brought before a magistrate pursuant to the outstanding warrant. We know of no rule of law which requires that a defendant in a sealed indictment be given any "opportunity" of the sort described; indeed such dealings between law enforcement officers and those charged with serious crime tend to injure public confidence in law enforcement, suggesting as they do, a double standard, or special treatment of "organized crime" as contrasted with "street crime" where arrests are sudden and free from ceremony or treaty.

■ Plaintiffs Carmine Apuzzo and Angelo Leonardi plead the existence of medical conditions so grievous that it would seem impossible for either of them to have engaged in the sort of criminal activity with which they are charged. Apuzzo, we are told, was arrested while en route to his doctor, held for three hours processing, refused medical attention, and "detained in the bull pen" without food, drink or medical assistance until his arraignment the following morning. Because of state court calendar congestion he waited in court for five hours, and was not bailed until the following morning. Apparently

(¶ 7) the arraignment judge was somewhat skeptical about his claimed need for medical care. No facts are set forth from which we may impute liability for any of these conditions or circumstances upon the District Attorney or his staff. However, manifold may be their duties, they do not preside over arraignment part or the detention facilities. If plaintiff was abused or neglected by any policeman or guard, he may have an action, but liability under *respondeat superior* does not exist as to these movants in this case.

■ Leonardi's health complaints did receive attention immediately upon his arrest, but at Jacobi Hospital, rather than at "his own hospital" (Complaint, ¶ 9). This aspect of the complaint is also frivolous.

On the motion, plaintiffs showed that on August 2, 8 and 9, 1974 defendant Merola advised the press of the status of proceedings affecting them. As a result of the information furnished by prosecutor Merola, stories of a somewhat lurid and sensational nature appeared in the press. Briefly summarized, these articles indicated [New York Times, August 9, 1974] that with the aid of "an electronic bugging device," a "usury ring focusing on small-business men in the Bronx has . . . been broken." Plaintiff Darienzo was described as the "ringleader," and said to be "strongly connected with the Tramunti crime family." Names and addresses of those indicted were listed. A New York *Post* article on August 8, 1974 quotes defendant Merola as announcing the arrests, and describes the nature of the criminal activities involved. It is clear that the statement describes charges only, rather than proven conduct. In the *Post,* unspecified members of the loansharking ring are also described as "linked directly to the Tramunti and Columbo crime families." The *Times Herald Record* of August 9, 1974 describes the arrests of 17 persons, including plaintiffs here, and notes that two of the 17 are "mem-

bers of the organized crime families of Carmine Tramunti and Joseph Columbo."

■■ It is clear that Merola and his two assistants, movants here, were acting in their official capacity as prosecutors and clothed with judicial immunity from actions for money damages "based on non-malicious conduct in their official capacity" within their jurisdiction. Palermo v. Rockefeller, 323 F.Supp. 478, 485 (S.D.N.Y.1971); Pierson v. Ray, 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967). No evidence of bad faith or actual malice on the part of movants was shown, and the bare allegations of misconduct by "defendants" lumped together, are insufficient.

■ Assuming, as we must for purposes of this motion, that the somewhat conflicting press accounts quote Merola correctly, no malice may be inferred therefrom. The District Attorney has wide discretion in the conduct of criminal prosecution, and in deciding what matters to present to the grand jury. He is an important elected official of the County. His work is intimately connected with public good; diligent performance of his duties are matters of vital public interest concerning which the public has a "right to know", and the media a legitimate interest in reporting, not only indictments and arrests, but their significance. Scope of the latter includes information about the extent and nature of the alleged loansharking racket, its methods of operation, the electronic means employed to detect it. Disclosure of the criminal affiliations of the defendants with the various well known local "families" was, arguably, a failure to comply with the ABA Standards Relating to the Administration of Criminal Justice, Fair Trial and Free Press, Part II, § 2.1(c)(1), which do not appear to have the force of law in New York. Also, there may have been a breach of DR 7–107(B)(1) of the Code of Professional Responsibility adopted by the New York State Bar Association (Judiciary Law Appendix, McKinney's Supp.1974). If so, this breach of prosecutorial responsibility does not amount to a "deprivation of . . . rights, privileges, or immunities secured by the Constitution and laws". 42 U.S.C. § 1983.

While the last chapter in the "fair trial-free press" controversy remains to be written, and while prejudicial pretrial utterances may justify trial delay or change of venue in a proper case, we are not prepared to say that a state district attorney will subject himself to civil liability in this Court for statements such as those attributed to him here. Apart from the right of the public to know, it would seem that the prosecutor should enjoy some right of free speech so as to permit him to account through the media to the voting public for his stewardship of his important public trust. Regrettably, when, as here, a prosecutor announces some action against organized crime operations, it is regarded as newsworthy, and somehow contrasting with the daily seining for small fish which seems to be the rule in many such offices.

Summary Judgment is granted and the Complaint is dismissed as to movants Merola, Darcy and Chesler. There is no just reason for delay. Rule 54(b), F.R.Civ.P. Our Clerk shall enter final judgment in favor of all three movants dismissing the Complaint and denying all relief as to them.

So Ordered.