**Robert J. FINE, Plaintiff-Appellant,**

v.

**The CITY OF NEW YORK et al.,
Defendants-Appellees,**

**Anthony Saladino et al., Defendants.**

**No. 373, Docket 75–7021.**

United States Court of Appeals,
Second Circuit.

Argued Dec. 8, 1975.

Decided Dec. 31, 1975.

Dan Brecher, New York City, for plaintiff-appellant.

Michael A. Ambrosio, New York City (W. Bernard Richland, Corp. Counsel, New York City, on the brief, L. Kevin Sheridan, New York City, of counsel), for defendant-appellee City of New York.

Harold C. Harrison, Forest Hills, N. Y., for defendant-appellee Kornberg.

Barbara Shore Resnicoff, Asst. Atty. Gen. of N. Y. (Louis J. Lefkowitz, Atty. Gen. of N. Y., and Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for defendants-appellees Gaudelli and Kahn.

Before KAUFMAN, Chief Judge, and SMITH and MESKILL, Circuit Judges.

IRVING R. KAUFMAN, Chief Judge:

In the last half-century, discussions of the effect of the exclusionary rule in criminal prosecutions have repeatedly quoted Cardozo's dictum, "the criminal is to go free because the constable has blundered." *People v. Defore,* 242 N.Y. 13, 21, 150 N.E. 585, 587 (1926). In this civil action for damages we are called upon to decide who may be held to pay for such blunders. Among the questions presented are whether a municipality may be held vicariously liable for the wrongful acts of its employees, either under the Civil Rights Act, 42 U.S.C. § 1981 *et seq.,* or on a claim founded directly upon the Fourteenth Amendment. Also to be considered are the more familiar parameters to be observed in imposing § 1983 liability upon public prosecutors and private attorneys for alleged violations of federal constitutional rights.

I.

A brief summary of the facts alleged in Fine's complaint in the court below will provide a fuller understanding of the controversy. On March 5, 1972, sixteen-year-old David Faulkner was arrested in a Queens, N. Y. bar for attempting to sell a gun. He told the police that the weapon belonged to Robert Fine, a taxicab driver with whom he claimed to have been living in a homosexual relationship. Faulkner offered to show the officers Fine's apartment and joined several of them as they conducted a warrantless entry and search of those premises. On the following day, March 6, Faulkner, accompanied by his attorney Marvyn Kornberg and Detectives Robert Radtke and Michael Sassaman, returned to the Fine apartment. Initially, they

approached the building superintendent seeking entrance to the apartment. Fine claims that Det. Radtke stated to the superintendent "We are the police" and Kornberg, though present, failed to identify himself as an attorney. The superintendent, however, was either unwilling or unable to grant them access. Undaunted, young Faulkner climbed a fire escape at the rear of the building, entered through a window, and admitted the detectives and Kornberg to the apartment, where they remained for more than one hour.[1]

In the course of their visits the officers seized gambling records, bullets, and photographs of nude males (including one of Faulkner). Fine also alleged that the police seized $3800 in cash, a valuable coin collection, 20,000 Colombian pesos (worth, at the time, roughly $1000), a phonograph, jewelry, safe deposit keys, and other items of value in the apartment. In addition, he says, they destroyed his furniture, impounded his two German Shepherds, and ripped apart his clothing.

Fine was arrested, while driving his taxicab, by officers of the New York City Police Department on March 7, 1972. He was charged in Queens County Supreme Court with sodomy, endangering the welfare of a child, promoting gambling, possession of gambling records in the second degree, and possession of weapons as a misdemeanor. Assistant District Attorney Herbert Kahn presented evidence of these offenses to a grand jury, including the items admittedly seized from Fine's apartment.

Fine moved in the Queens County criminal proceedings to suppress the evidence, seized during his absence from the apartment and without benefit of either arrest or search warrants. After a suppression hearing, State Supreme Court Justice Brennan granted the motion on January 17, 1974, and ordered suppression of all items taken from the apartment. Each of the charges pending against Fine was subsequently dismissed.

In the course of the suppression hearing Fine made several charges of corruption. Among them were his claims that the police had broken into his home and stolen or destroyed valuable property. He also stated that money had been extorted from him (by Frank Klein, his own attorney, and Kornberg, among others) to secure the return of his impounded taxicab and to induce Faulkner's mother to agree to a dismissal of the criminal charges against him. Assistant District Attorney Albert Gaudelli, assigned to investigate these charges, was presenting evidence to the grand jury relating to them when superseded by Special State Prosecutor Maurice Nadjari's probe into the matter.

Eventually, Fine commenced the instant action in the Southern District of New York seeking more than $5 million in damages pursuant to the Civil Rights Act, 42 U.S.C. § 1981 *et seq.,* and the Fourteenth Amendment.[2] Named as defendants, though not parties to this appeal, were David Faulkner, his mother Dolores, and the police officers who had allegedly entered and rampaged through Fine's apartment.[3] Fine's complaint also named Assistant District Attorneys Kahn and Gaudelli, the City of New York, and attorneys Klein and Kornberg.

On November 22, 1974, Judge Brieant granted motions to dismiss the complaint made pursuant to Fed.R.Civ.P. 12(b)(6),

---

**1.** The officers again failed to secure a warrant for the March 6 visit. In addition, Det. Sassaman returned to the apartment alone on March 7 for the purpose, he said, of returning some coins seized the previous day but not vouchered with the New York City Police Department's Property Clerk.

**2.** Fine also commenced a replevin action in the state courts against the City of New York to secure the return of his seized property. This suit does not appear to have been resolved.

**3.** Included in this group is the estate of Det. Radtke. Radtke was purported to be the primary moving force behind the raids and seizures. He died soon after the Nadjari investigation into the incidents had begun, allegedly by his own hand. Fine's complaint against the Faulkners and the police officers is still pending in the court below.

for failure to state a claim against defendants Kahn, Gaudelli, Klein and Kornberg. He also dismissed, *sua sponte,* the complaint against the City of New York. From these dismissals Fine appeals.[4]

## II.

■ Section 1983 requires the fulfillment of certain conditions before a plaintiff may prevail.

First, the plaintiff must prove that the defendant has deprived him of a right secured by the "Constitution and laws" of the United States. Second, the plaintiff must show that the defendant deprived him of this constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." This second element requires that the plaintiff show that the defendant acted "under color of law."

*Adickes v. Kress & Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Moreover, the party against whom recovery is sought must be a "person" within the meaning of the Civil Rights Act,[5] and not be cloaked with immunity.

### KAHN AND GAUDELLI.

■ Fine recited in his civil rights complaint against the prosecutors that Kahn had presented evidence, later suppressed, to a grand jury. Gaudelli, he alleged, presented other evidence to a subsequent grand jury. He also stated,

in most conclusory terms, that they had wrongfully withheld his property, suborned perjury, tampered with and coerced witnesses, hindered criminal prosecution, and committed other wrongful acts. No details were offered, however, in support of these claims. Complaints relying upon 42 U.S.C. § 1981 *et seq.* are plainly insufficient unless they contain at least some allegations of facts indicating a deprivation of civil rights. *Powell v. Jarvis,* 460 F.2d 551, 553 (2d Cir. 1970). *See also Birnbaum v. Trussell,* 347 F.2d 86, 89–90 (2d Cir. 1965); *Powell v. Workmen's Compensation Bd.,* 327 F.2d 131, 136 (2d Cir. 1964). The complaint against the assistant district attorneys, therefore, must fall, for their presentation of evidence to the grand juries under the circumstances of this case is insulated from liability under 42 U.S.C. § 1983.

Just as settled principles of judicial immunity were not abrogated by enactment of 42 U.S.C. § 1983, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), so has this court repeatedly given its approval to the extension of a similar, quasi-judicial immunity to the official acts of public prosecutors performed within their authority. *Dacey v. N. Y. County Lawyers' Assoc.,* 423 F.2d 188, 192 (2d Cir. 1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970);[6] *Fanale v. Sheehy,* 385 F.2d 866 (2d Cir. 1969); *Palermo v. Rockefeller,* 323 F.Supp. 478 (S.D.N.Y.1971). *See also Gregoire v. Biddle,* 177 F.2d 579 (2d Cir.

---

**4.** After Judge Brieant's order was filed, Fine offered new evidence, including a deposition given by Det. Sassaman, pursuant to Fed.R. Civ.P. 60(b). Upon reargument, on May 27, 1975 the court below adhered to its earlier decision in all respects save that leave was granted Fine to amend his complaint against attorney Kornberg within 20 days. Fine failed to avail himself of this opportunity. *See infra.*

**5.** 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Consti-

tution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

**6.** A public prosecutor thus possesses the same immunity in an action which seeks to hold him personally liable for official acts under § 1983 as he does to a similar action for malicious prosecution.

423 F.2d at 192. We note, however, the recurring division of opinion on the wisdom of extending such immunity and its appropriate scope. *See id.,* at 192 n. 5 and cases there cited. Aspects of these questions are currently *sub judice* in *Imbler v. Pactman,* 500 F.2d 1301 (9th Cir. 1974), *cert. granted* 420 U.S. 945, 95 S.Ct. 1324, 43 L.Ed.2d 423 (1975), *affirmed* —— U.S. ——, 96 S.Ct. 984, 47 L.Ed.2d

1949), *cert. denied,* 339 U.S. 949, 70 S.Ct. 803, 94 L.Ed. 1363 (1950). It is clear that the presentation of evidence to grand juries is precisely the sort of prosecutorial function, often requiring "principled and fearless decision making", that the immunity rule is designed to promote. *Fanale v. Sheehy, supra,* 385 F.2d at 868.

Judge Brieant ruled that "[a]s no facts are alleged on the part of these defendants [Kahn and Gaudelli] which are not within their official responsibility, they are immune under the circumstances of this case." We agree with that conclusion.[7]

### KLEIN AND KORNBERG.

The claims against attorneys Klein and Kornberg foundered below upon the requirement of § 1983 that Fine prove they acted "under color of law" in depriving him of some constitutional right. *See Adickes v. Kress & Co., supra,* 398 U.S. at 150, 90 S.Ct. 1598. Fine alleged that his former attorney, Frank Klein, had participated in the extortion of $550 to secure the release of his impounded taxicab, and of $500 to induce David Faulkner and his mother to have the charges against Fine dismissed. He also charged that Klein failed to render, or improperly and negligently rendered, legal services for which he had been paid.

■ Accepting these allegations as true, *Escalera v. N. Y. C. Housing Authority,* 425 F.2d 853, 857 (2d Cir.), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970), we agree with the conclusion of the court below that Klein did not act "under color of law", but merely in the capacity of a private attorney then representing Fine in state criminal proceedings.

It has been observed that the test of "under color" of law is difficult to satisfy in the case of one other than a government official. *Jobson v. Henne,* 355 F.2d 129, 133 (2d Cir. 1966); *Powell v. Jarvis, supra,* 460 F.2d at 553. While it is true that Klein might be liable if he had been a "willful participant in joint activity with the State or its agents," *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 1157, 16 L.Ed.2d 267 (1966), appellant has clearly failed to allege such concerted activity. Whatever cause of action he might have against his lawyer, whether sounding in professional malpractice, tort, or otherwise, is one of state law insufficient to vest a federal court with jurisdiction over the subject matter. Although Klein's status as an attorney provides him with no immunity, neither does it satisfy the test of state action that must be met before liability may be imposed pursuant to § 1983. The dismissal of the claims against Klein is affirmed.[8]

■ The allegations against Marvyn Kornberg, however, present a more complex question. Fine contended that the police officers forcibly entered and searched his apartment, and destroyed, damaged, and took possession of his property, "with the knowledge and consent" of both Kornberg and young David Faulkner. Moreover, Kornberg had accompanied his client and Detectives Radtke and Sassaman during the March 6 visit to the Fine apartment, during which some of the wrongful acts allegedly occurred. And upon reargument Fine alleged that when Det. Radtke spoke to

128, 44 USLW 4250 (Mar. 2, 1976). *See also* the discussions of limited immunity to be afforded in § 1983 actions to legislators, *Tenney v. Brandhove,* 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019 (1951); members of the executive branch, *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); and school administrators, *Wood v. Strickland,* 420 U.S. 308, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975).

**7.** We also perceive no abuse of discretion in the lower court's refusal to exercise pendent jurisdiction over the numerous claims against these appellees founded upon alleged violations of state law.

**8.** In view of this conclusion, of course, we need not reach the question whether the complaint against Klein would, in any event, sufficiently spell out a claim of deprivation of a federal constitutional right.

the building superintendent he stated "we are the police" and Kornberg, though present, failed to identify himself as a private attorney.

■ Since the complaint was dismissed upon a motion to dismiss for failure to state a claim, we must accept these allegations as true. *Escalera v. N. Y. C. Housing Authority, supra,* 425 F.2d at 857. Viewing the complaint against Kornberg in this light, we find it sufficient to state a claim upon which relief might be granted. Its dismissal, therefore, was improper.

Fine has alleged serious violations of his Fourth Amendment right "to be secure . . . against unreasonable searches and seizures." But he must also allege facts sufficient to establish that Kornberg acted "under color" of law. Although it is a close question, viewing the complaint in the light most favorable to Fine, we believe his claim may satisfy this requirement. The Supreme Court, in a closely related context, has observed that

> Private persons, jointly engaged with state officials in the prohibited action, are acting "under color" of law for purposes of the statute. To act "under color" of law does not require that the accused be an officer of the State. It is enough that he is a willful participant in joint activity with the State or its agents.

*United States v. Price, supra,* 383 U.S. at 794, 86 S.Ct. at 1157.[9]

An amended complaint against Kornberg, drafted with greater precision and specificity, could of course, clarify the matter beyond question.[10]

### THE CITY OF NEW YORK.

■ In dismissing the complaint against the City, *sua sponte,* the court below properly concluded that "it appears that there is no claim stated against the defendant City of New York under the federal statute." In *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Supreme Court explicitly held that a municipal corporation is not a "person" within the meaning of § 1983. *Id.* at 187–92, 81 S.Ct. 473. *See also City of Kenosha v. Bruno,* 412 U.S. 507, 513, 93 S.Ct. 2222, 37 L.Ed.2d 109 (1973). As such, the City is not within the statutes's reach of potential defendants, and is therefore exempted from monetary liability in suits brought pursuant to it.[11]

Recognizing the futility of invoking § 1983 against the City, appellant urges a claim founded directly upon the Fourteenth Amendment and 28 U.S.C. § 1331(a) as an alternative basis for relief. He suggests that support for this claim is furnished by the recent decision by a panel of this Court in *Brault v. Town of Milton,* 527 F.2d 730 (2d Cir. 1975). The majority there decided that "the plaintiffs' complaint states a cause of action stemming from the Due Process Clause of the Fourteenth Amendment . . .", *id.* at 734 and rejected the view "that municipalities enjoy any special status which would immunize them from suits to redress deprivations

---

**9.** While the *Price* Court was discussing 18 U.S.C. § 242, it specifically noted that "under color" of law "means the same thing in § 242 that it does in the civil counterpart of § 242, 42 U.S.C. § 1983." *Id.* at 794 n. 7, 86 S.Ct. at 1157. *See also Adickes v. Kress & Co., supra,* 398 U.S. at 152 n. 7, 90 S.Ct. 1598, *Monroe v. Pape,* 365 U.S. 167, 185, 81 S.Ct. 473 (1961).

**10.** By this disposition we do not, of course, express any view as to the ultimate resolution on the merits of appellant's claims against Kornberg.

**11.** *See also Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973),

where the Court rejected the suggestion that state law imposing vicarious liability upon municipalities be adopted into federal law, thus independently creating the basis for a federal claim pursuant to 42 U.S.C. § 1988. The Court concluded that

> Congress did not intend, *as a matter of federal law,* to impose vicarious liability on municipalities for violations of federal civil rights by their employees.

*Id.* at 710 n. 27, 93 S.Ct. at 1796 (emphasis in original).

of federal constitutional rights." *Id.* at 735.

The panel's decision in *Brault* was filed on February 24, 1975, some three months after Judge Brieant dismissed Fine's complaint against the City of New York. Upon reargument, however, the district judge concluded that the *Brault* decision was not in point. While the *Town of Milton* had acted directly as a municipal corporation,[12] Fine, in the judge's view, was attempting to visit liability upon the City vicariously for the allegedly tortious activities of its employees.

■ Subsequently we granted an application by the Town of Milton for a rehearing of the appeal *en banc.* Upon further examination of the record, the *en banc* court found it

unnecessary to resolve the Fourteenth Amendment and several other issues raised by the parties.

*Brault v. Town of Milton,* 527 F.2d 736 (2d Cir. 1975) (en banc). The *en banc* majority, therefore, did not reach the underlying questions of substantive liability and municipal immunity under the Fourteenth Amendment. *See id.* at 741 (dissenting opinion). We, too, are of the view that we need not decide these difficult and troublesome constitutional questions at this juncture.[13] Rather, we remand to the district court for a determination whether, assuming *arguendo* that such a claim for damages might be founded directly upon the Fourteenth Amendment and 28 U.S.C. § 1331(a), it would in all events be time-barred against the City.

■ This conclusion is dictated, in large measure, by the familiar principle

that we should not reach out to decide constitutional questions unnecessarily. *See, e. g., Rosenberg v. Fleuti,* 374 U.S. 449, 451, 83 S.Ct. 1804, 10 L.Ed.2d 1000 (1963); *Spector Motor Serv., Inc. v. McLoughlin,* 323 U.S. 101, 105, 65 S.Ct. 152, 89 L.Ed. 101 (1944); *Ashwander v. T. V. A.,* 297 U.S. 288, 346–47, 56 S.Ct. 466, 80 L.Ed. 688 (1936). (Brandeis, J., concurring). There is, moreover, a need that the court below consider and decide several factual issues whose resolution may determine that such a suit against the City is untimely—an issue on which we intimate no views.

■ To aid the court below in its deliberations on remand, we offer several observations. As a preliminary matter, of course, the appropriate statute of limitations to be applied must be ascertained. We note in this regard the Supreme Court's recent decision in *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). The Court approved the principle that

Since there is no specifically stated or otherwise relevant federal statute of limitations for a cause of action under [42 U.S.C.] § 1981, the controlling period would ordinarily be the most appropriate one provided by state law.

*Id.* at 4626, 95 S.Ct. at 1721. A similar approach is warranted in determining the controlling statute of limitations for a claim founded directly upon the Fourteenth Amendment. For purposes of this case, we believe the one year and ninety day period of limitation provided by New York's General Municipal Law § 50–i,[14] governing tort claims against municipalities, would appear to be "the most appropriate one provided by state law."

---

12. The *Braults* had sought damages for deprivation of property rights without due process occasioned by the Town's enforcement of a zoning ordinance.

13. At the same time, of course, we need not determine whether the considerations prompting the Supreme Court to reject derivative liability in § 1983 actions would be equally persuasive in such a constitutionally-based action.

*See Moor v. Alameda County,* 411 U.S. 693, 698–710, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973); *Johnson v. Glick,* 481 F.2d 1028, 1034 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). *See also Apton v. Wilson,* 506 F.2d 83, 95–96 (2d Cir. 1974).

14. Section 50–i, subdivision 1, provides in pertinent part:

No action or special proceeding shall be prosecuted or maintained against a city

Fine's claims against the City of New York are premised, initially, upon the 1972 entrance by its police officers into his apartment and seizure of his valuables.[15] Items seized were suppressed in 1974 state court criminal proceedings, and the charges against Fine based upon that evidence were subsequently dismissed. He also contends, however, that the City continues wrongfully to withhold his property, as well as his driver's license, "mug shots", fingerprints, and "hack license."

The period of limitations under § 50–i[1] commences with "the happening of the event upon which the claim is based." Thus the court below should determine, under applicable New York law, whether the relevant "event" is the break-in and seizures, the state court's order suppressing items seized, the dismissal of state criminal charges against Fine, or the withholding of his property, which is alleged to have wrongfully continued to this day.[16]

Accordingly, we reverse and remand as to appellees Kornberg and the City of New York, and affirm as to Kahn, Gaudelli, and Klein.

J. JOSEPH SMITH, Circuit Judge (concurring and dissenting):

I concur in the opinion of Chief Judge Kaufman and in the disposition of the appeal in all respects except one. I would hold the statute of limitations no defense at least as to the allegations of continuing deprivation of property illegally seized and not returned.

I would therefore find it necessary to reach the merits of the claim against the City and would hold that a claim against the City based on the Fourteenth Amendment is stated, see panel opinion in *Brault v. Town of Milton*, 527 F.2d 730 (2d Cir. 1975), and Oakes, J., dissenting in *Brault v. Town of Milton*, 527 F.2d 744 (2d Cir. 1975) (*en banc*.) I would also hold that a state law tort claim against the City is stated, as the City appears to concede, (see City's brief p. 7) and should be entertained by the court under the theories of pendent jurisdiction, *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Ryan v. J. Walter Thompson Co.*, 453 F.2d 444 (2d Cir. 1971); see also Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction* § 3567 at 451–52 particularly n. 35; and pendent parties, *Leather's Best, Inc. v. S. S. Mormaclynx*, 451 F.2d 800, 809–11 (2d Cir. 1971); *Astor-Honor, Inc. v. Grosset & Dunlap, Inc.*, 441 F.2d 627, 629–30 (2d Cir. 1971).

As to the City, therefore, I would reverse and remand for trial as to all issues.

---

. . . for personal injury or damages to real or personal property alleged to have been sustained by reason of the negligence or wrongful act of such city . . . or of any officer, agent or employee thereof . . unless . . . (c) the action or special proceeding shall be commenced within one year and ninety days after the happening of the event upon which the claim is based. Presumably, this section would have applied to Fine's claims against the City had they been brought in the New York state courts.

**15.** Appellant also averred in his complaint that he was assaulted by New York City police officers of the 109th Precinct after his arrest on March 7, 1972.

**16.** *See, e. g., Dwyer v. Nassau County,* 66 Misc.2d 1039, 322 N.Y.S.2d 811 (1971); *Kamienska v. Westchester County,* 39 Misc.2d 750, 241 N.Y.S.2d 816 (1963); *Hackensack Water Co. v. Village of Nyack,* 289 F.Supp. 671 (S.D. N.Y.1968) and cases there cited.