AMALGAMATED MEAT CUTTERS & BUTCHERS WORKMEN OF NORTH AMERICA, LOCAL UNION NO. 576, Tony Richards, Donald Keith Chirillo, Lawrence Dale, Wanda L. Colmer and Jesse Earl Glydewell, Appellants,

v.

WETTERAU FOODS, INCORPORATED, Thomas Briggs and Richard Dailey, d/b/a Briggs & Dailey IGA, Appellees.

No. 78–1726.

United States Court of Appeals, Eighth Circuit.

Submitted March 14, 1979.

Decided May 2, 1979.

Jerome F. X. Waterman of Houlehan & Waterman, Kansas City, Mo. (argued), and Robert L. Kimbrough, Topeka, Kan., on brief, for appellants.

S. Richard Heymann, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo. (argued), and Thomas C. Walsh, St. Louis, Mo., on brief, for appellee Wetterau.

David F. Yates, Suelthaus, Krueger, Cunningham, Yates & Kaplan, St. Louis, Mo., argued and on brief, for appellees Briggs and Dailey.

Before GIBSON, Chief Judge, and ROSS and McMILLIAN, Circuit Judges.

GIBSON, Chief Judge.

This is an appeal from the dismissal, for failure to state a claim upon which relief can be granted, of appellants' complaint seeking treble damages [1] for an alleged violation of sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2 (1973),[2] and the Missouri antitrust law, Mo.Rev.Stat. § 416.-010 et seq. (1969). The District Court[3] found that the complaint portrayed a labor dispute between union and employer and held that since federal labor laws clearly sanctioned the conduct involved, it could

not give rise to an antitrust violation.[4] We affirm.

The five individual appellants are employees in the meat department of Briggs & Dailey IGA, a grocery store in Moberly, Missouri. They constitute a bargaining unit represented by the Amalgamated Meat Cutters & Butchers Workmen of North America, Local Union No. 576, which is also an appellant. The union, as the certified bargaining agent, negotiated for a collective bargaining agreement with Briggs & Dailey for three months without result. When negotiations came to an impasse on March 10, 1978, the union called an economic strike. In order to continue the operation of the meat department, Briggs & Dailey replaced the striking workers with personnel provided by Wetterau, Incorporated, a wholesale food supplier, which supplied food products to Briggs & Dailey. Wetterau continued to pay the salaries of these personnel, and merely loaned them to Briggs & Dailey on a temporary basis to perform retail meat cutting. After only a few weeks Wetterau withdrew the replacement workers when the union allegedly threatened to strike Wetterau. Appellants claim that the agreement between Wetterau and Briggs & Dailey to supply replace-

---

1. 15 U.S.C. § 15 (1973) provides:

 Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of the suit, including a reasonable attorney's fee.

2. 15 U.S.C. § 1 states in relevant part:

 Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal: * * *.

 15 U.S.C. § 2 provides:

 Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor, and, on conviction thereof, shall be

punished by fine not exceeding fifty thousand dollars, or by imprisonment not exceeding one year, or by both said punishments, in the discretion of the court.

3. The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri.

4. The District Court did not separately address the state law claim. However, since the District Court found that this case presented merely a normal labor dispute, the doctrine of federal preemption requires that this controversy be governed by federal law. Connell Construction Co., Inc. v. Plumbers & Steamfitters Local Union No. 100, 421 U.S. 616, 635–37, 654 n.13, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1974); San Diego Building Trades Council v. Garmon, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959); California State Council of Carpenters v. Associated General Contractors of California, Inc., 404 F.Supp. 1067, 1072 (N.D.Cal.1975). The state antitrust law claim was properly dismissed with prejudice.

ment workers constitutes a combination in restraint of trade.[5]

Although generally a motion to dismiss does not satisfactorily dispose of a complex antitrust action, *see Bales v. Kansas City Star Co.,* 336 F.2d 439 (8th Cir. 1964), we have approved its use in actions where the pleaded allegations are not sufficient to base a claim upon which relief can be granted. In *Hiland Dairy, Inc. v. Kroger Co.,* 402 F.2d 968, 973 (8th Cir. 1968), *cert. denied,* 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969), we stated:

> A motion to dismiss for failure to state a cause of action can serve a useful purpose in disposing of legal issues with a minimum of time and expense to the interested parties and is applicable to an anti-trust complaint. In testing the legal sufficiency of the complaint the well-pleaded allegations are taken as admitted but conclusions of law and unreasonable inferences or unwarranted deductions of fact are not admitted. See, 2A Moore's Federal Practice § 12.08, p. 2244.

This observation is particularly appropriate in the instant case because appellants' arguments are premised upon an unreasonable characterization of the facts.

Appellants rely upon the proposition that: "Clearly this is conduct which lies wholly outside the context of any collective bargaining relationship and any 'normal labor dispute.'" The fallacy of this thesis is blatant. Briggs & Dailey merely used Wetterau employees to temporarily replace the striking meatcutters in order to counter the union's economic pressure on the contract negotiations. The agreement had no purpose or effect beyond the scope of the labor dispute.

The union and striking employees were exercising their right to bring economic pressure upon an employer to meet their demands. Under the law they have the right to refuse to work, the right to strike and the right to picket to bring economic pressure upon management to accede to their demands, but neither the striking employees nor the union have unlimited control over the employer. In *NLRB v. Mackay Radio & Telegraph Co.,* 304 U.S. 333, 345, 58 S.Ct. 904, 82 L.Ed. 1381 (1938), the United States Supreme Court recognized the right of an employer in a labor dispute regarding negotiations for a collective bargaining agreement to resist the pressures created by a union's economic strike by replacing striking employees in an effort to carry on business. The continued operation of a business by replacement of economic strikers furthers competition and free interchange of goods in commerce. This court has supported an employer's right to carry on his business by replacing striking employees on numerous occasions. *See, e. g., Little Rock Airmotive, Inc. v. NLRB,* 455 F.2d 163, 166 (8th Cir. 1972); *Wilkinson Manufacturing Co. v. NLRB,* 456 F.2d 298, 305 (8th Cir. 1972); *First National Bank of Omaha v. NLRB,* 413 F.2d 921, 925 (8th Cir. 1969); *NRLB v. Gopher Aviation, Inc.,* 402 F.2d 176, 183 (8th Cir. 1968); *NRLB v. L. G. Everist, Inc.,* 334 F.2d 312, 317 (8th Cir. 1964).

Since Briggs & Dailey's conduct clearly complies with the acceptable framework of labor negotiations contemplated by federal labor policy, it is necessary to examine congressional intent in the context of accommodating the Sherman Act to the policies of federal labor laws. The antitrust laws were enacted to prevent restraints to free competition in business and commercial transactions that tend to restrict production, control prices or otherwise control the market to the detriment of consumers. *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). They were not enacted to regulate labor relations.

Congress provided a statutory labor exemption from the antitrust laws. 15 U.S.C.

---

**5.** Neither appellants' complaint nor their brief alleges that appellees have monopolized or attempted to monopolize any product or geographical location, and the factual allegations do not suggest the existence of a monopoly or an attempt to monopolize. Therefore, appellants have failed to state a claim for violation of section 2 of the Sherman Act, 15 U.S.C. § 2 (1973).

§§ 17 and 26; 29 U.S.C. §§ 52, 104, 105 and 113; *see Connell Construction Co., Inc. v. Plumbers & Steamfitters Local Union No. 100,* 421 U.S. 616, 621, 622, 95 S.Ct. 1830, 44 L.Ed.2d 418 (1975). Although these statutes do not directly address the activities involved in this case where the agreement is between two employers, these statutes demonstrate a congressional purpose to restrict the application of the antitrust laws when they unduly interfere with the goals of federal labor law. In resolving conflicts in areas where federal antitrust and labor policies seemingly overlap, the Supreme Court has recognized a nonstatutory labor exemption. *Federal Maritime Commission v. Pacific Maritime Association,* 435 U.S. 40, 58, 98 S.Ct. 927, 55 L.Ed.2d 96 (1978); *Connell Construction Co., Inc. v. Plumbers & Steamfitters Local Union No. 100, supra,* 421 U.S. at 622, 95 S.Ct. 1830; *Volkswagenwerk Aktiengesellschaft v. Federal Maritime Commission,* 390 U.S. 261, 287, 88 S.Ct. 929, 19 L.Ed.2d 1090 (Harlan, J., concurring), *modified regarding taxation of costs,* 392 U.S. 901, 88 S.Ct. 2049, 20 L.Ed.2d 1361 (1968); *Local Union No. 189, Amalgamated Meatcutters & Butcher Workmen v. Jewel Tea Co., Inc.,* 381 U.S. 676, 691–97, 85 S.Ct. 1596, 14 L.Ed.2d 640 (1965); *United Mine Workers of America v. Pennington,* 381 U.S. 657, 666, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *see also California State Council of Carpenters v. Associated General Contractors of California, Inc.,* 404 F.Supp. 1067

(N.D.Cal.1975). Defining the boundaries of this exemption has not proved an easy task. A court must balance the degree of interference with federal labor policy with the magnitude of the restraint of trade and whether the restraint directly or indirectly affects market prices and free competition for the consuming public.[6]

Briggs & Dailey temporarily accepted the use of Wetterau employees to counteract the effect of the strike and continue operation of the meat department. Appellant union argues that this restrained it in its trade in terms of attracting membership and representing employees. The individual appellants argue that they were restrained in their business and enterprise of earning wages. Since any injury to appellants would flow naturally from the replacement of striking workers, which conduct federal labor policy sanctions, *see Mackay, supra,* the agreement between Briggs & Dailey and Wetterau cannot constitute a violation of the antitrust law. Federal labor policy sanctions both the goal of resisting union demands and the method of replacing striking workers and the magnitude and nature of any restraint of trade or commerce in this case directly follows from the sanctioned conduct. The agreement had no anticompetitive effect unrelated to the collective bargaining negotiations.[7]

---

**6.** In *Stifel, Nicolaus & Co., Inc. v. Dain, Kalman & Quail, Inc.,* 578 F.2d 1256, 1259 (8th Cir. 1978), this court explained a limitation on the antitrust statute appellees allegedly violated.

While § 1 of the Sherman Act in terms prohibits all combinations and conspiracies in restraint of interstate or foreign trade or commerce, the scope of the Act has been narrowed by judicial construction to combinations or conspiracies which "unreasonably" affect trade or commerce in the sense that they violate the "rule of reason" which has long been recognized in antitrust cases. *See, e. g., Northern Pacific R. Co. v. United States,* 356 U.S. 1, 4–5, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958), and *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940). The rule of reason requires that the restraint in question affect market prices or otherwise deprive the consuming public of the benefits of free competition. *Apex Ho-*

*siery Co. v. Leader, supra,* 310 U.S. at 500–01, 60 S.Ct. 982, and cases cited.

578 F.2d at 1259. *See also Standard Oil Co. v. United States,* 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1911).

In the evaluation of whether activity related to labor relations constitutes a restraint of trade or commerce which the Sherman Act condemns there is substantial interplay between the theory of the labor exemption and the "rule of reason" doctrine, *see Apex Hosiery Co. v. Leader,* 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940), and the protection afforded appellees in the instant case could stem from either basis.

**7.** The agreement profited Wetterau, the wholesale food supplier, only by continuing the operation of Briggs & Dailey as a retail outlet for Wetterau products in the face of an economic strike which threatened to close this outlet. While Wetterau's conduct may have made it a

Appellants rely upon "sham labor union" cases to support their claim. *Tugboat, Inc. v. Mobile Towing Co.,* 534 F.2d 1172 (5th Cir. 1976); *Carpenters District Council v. United Contractors Association of Ohio, Inc.,* 484 F.2d 119 (6th Cir. 1973), *modified,* 539 F.2d 1092 (6th Cir. 1976); *International Association of Heat and Frost Insulators and Asbestos Workers v. United Contractors Association, Inc. of Pittsburg, Pennsylvania,* 483 F.2d 384 (3d Cir. 1973), *modified,* 494 F.2d 1353 (3d Cir. 1974). Although these cases can be distinguished upon various grounds, the mere absence of any "sham" labor organization in the instant case sufficiently destroys their precedential value here. Briggs & Dailey does not dispute the union's status as the certified bargaining representative of the meatcutters in its Moberly, Missouri, store. It did not seek to establish a company-dominated labor organization or to affect any commercial or trade relationship other than its collective bargaining agreement with the union. Briggs & Dailey's sole purpose in using the temporary replacements supplied by Wetterau was to continue its business in order to reinforce its bargaining power in the negotiations regarding a collective bargaining agreement with the union, while the union sought by its economic strike to make unprofitable Briggs & Dailey's operation, and thus enhance the union's bargaining power in the labor dispute. Neither side had the absolute right to unilaterally control the other and the collective bargaining process was free to be carried to its ultimate conclusion.

The judgment of the District Court is affirmed.

party to the labor dispute, supplying temporary replacement workers did not have any anticompetitive effect beyond the labor relations at the Moberly, Missouri, store.