**LOCAL UNION 808, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, et al.**

v.

**P & W RAILROAD COMPANY, et al.**

Civ. No. N–82–325.

United States District Court, D. Connecticut.

May 24, 1983.

Charles C. Goetsch, Cahill & Goetsch, New Haven, Conn., for plaintiffs; Brian O'Dwyer, O'Dwyer & Bernstein, New York City, of counsel.

Jackson T. King, New Haven, Conn., Arnold Elkind, Snug Harbor, Conn., Thomas Shortell, Updike, Kelly & Spellacy, Hartford, Conn., for defendants.

## MEMORANDUM OF DECISION

ELLEN B. BURNS, District Judge.

This is an action by Local 808, International Brotherhood of Teamsters (Local 808), and 35 individuals, all members of Local 808, under the Railway Labor Act (RLA), 45 U.S.C. § 151 *et seq.*, the Sherman and Clayton Antitrust Acts, 15 U.S.C. §§ 1, 2, 4 and 26, and state law against the Providence and Worcester Railroad Company (P & W), its parent company the Providence and Worcester Company (Company), five officers and employees of the P & W, the United Transportation Union (UTU) and eight of its officers and agents. The twelve-count amended complaint alleges in detail that the P & W and several of its officers and employees violated Section 2, First, Second, Third, Fourth, Sixth, Seventh, Eighth and Ninth of the RLA, and that the UTU and several of its officers and agents violated Section 2, Second and Fourth of the RLA. In addition to an antitrust claim against all defendants, plaintiffs allege the UTU defendants tortiously interfered with Local 808's business relationship with the P & W. Jurisdiction over these claim is premised on 28 U.S.C. §§ 1331 and 1337 and the doctrine of pendent jurisdiction. This case is now before the Court on defendants' motions to dis-

miss and plaintiffs' request for preliminary injunctive relief.[1]

By way of background, the P & W, which began operating in 1973, carries freight on lines in Connecticut, Rhode Island and Massachusetts. Until November 7, 1980, defendant UTU was the National Mediation Board certified collective bargaining representative for the P & W's operating employees known as trainmen. Employees in other crafts were then and are now represented by other unions. After a representational election in October, 1980, the National Mediation Board (NMB) certified the Trainmen's Guild as the new collective bargaining agent for the trainmen on November 7, 1980. On February 28, 1981, the Trainmen's Guild merged with the International Brotherhood of Teamsters and, in July, 1981, NMB certification was transferred to Local 808.

This suit focuses on allegedly unlawful conduct of the UTU and the P & W toward Local 808 from November 7, 1980, until April 24, 1982, when the P & W locked-out the members of Local 808 or Local 808 called a strike and its members set up picket-lines at the P & W's terminals. This action was commenced on June 25, 1982, with the filing of a seven-count complaint and the entry of an order requiring defendants to appear in court on July 26, 1982, and show cause why a preliminary injunction should not issue against them. An evidentiary hearing on plaintiffs' motion for a preliminary injunction began on July 26 and ended October 12, 1982, after nineteen days of testimony. Motions to dismiss were filed on August 2 and renewed by the UTU defendants after plaintiffs amended the complaint and the Court reserved decision pending the completion of the evidentiary hearing on plaintiffs' motion.

## I. Motions to Dismiss by UTU

### A. Count VI: Restraint of Trade

■ In Count VI, which arises under 15 U.S.C. §§ 1, 2, 4 and 26,[2] plaintiffs allege

---

1. Although the Court held an extended evidentiary hearing devoted entirely to plaintiffs' entitlement to a preliminary injunction, no motion for a preliminary injunction was ever filed. What was filed, however, was an order to show cause, which requested the entry of an order granting preliminary injunctive relief. Defendants have not objected that a proper motion for a preliminary injunction was not filed but instead have responded as if such a motion was filed. Accordingly, the Court is of the opinion that the matter is properly before it for decision.

2. 15 U.S.C. § 1 provides:

Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal. Every person who shall make any contract or engage in any combination or conspiracy hereby declared to be illegal shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 2 provides:

Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding one million dollars if a corporation, or, if any other person, one hundred thousand dollars or by imprisonment not exceeding three years, or by both said punishments, in the discretion of the court.

15 U.S.C. § 4 provides:

The several district courts of the United States are invested with jurisdiction to prevent and restrain violations of sections 1 to 7 of this title; and it shall be the duty of the several United States attorneys, in their respective districts, under the direction of the Attorney General, to institute proceedings in equity to prevent and restrain such violations. Such proceedings may be by way of petition setting forth the case and praying that such violation shall be enjoined or otherwise prohibited. When the parties complained of shall have been duly notified of such petition the court shall proceed, as soon as may be, to the hearing and determination of the case; and pending such petition and before final decree, the court may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises.

15 U.S.C. § 26 provides:

Any person, firm, corporation, or association shall be entitled to sue for and have injunctive relief, in any court of the United States having jurisdiction over the parties, against threatened loss or damage by a violation of the antitrust laws, including sections 13, 14, 18 and 19 of this title, when and under

the P & W defendants and the UTU defendants

> have sought: (a) to interfere with, impair and restrain LOCAL 808 in its lawful status as the NMB certified collective bargaining agent of the Carrier's operating employees, all of which has had a restraining impact on trade and commerce in and among several states; (b) to interfere with, impair and deny plaintiff members of LOCAL 808 right and opportunity to work and earn wages as operating employees of the P & W Railroad; and (c) to combine and conspire for the purpose of eliminating and excluding competition in the business of representing operating employees in the railroad industry, with the object of restraining trade and interstate commerce among the several states.[3]

By way of relief, plaintiffs request an order "preliminarily and permanently enjoining defendants from continuing their illegal combination to restrain and injure LOCAL 808 in its business of representing employees of railroad carriers and to deny LOCAL 808's members their right to work and earn wages as trainmen...."[4]

The Sherman Act, which prohibits concerted action in restraint of "trade or commerce among the several states ...," was enacted primarily "to protect consumers from monopoly prices, and not to serve as a comprehensive code to regulate and police all kinds and types of interruptions and obstructions to the flow of trade." *Allen Bradley Co. v. Local Union No. 3, IBEW,* 325 U.S. 797, 806, 65 S.Ct. 1533, 1538, 89 L.Ed. 1939 (1945). As interpreted by the Second Circuit, the antitrust laws "were designed principally to outlaw restraints upon commercial competition in the marketing and pricing of goods and services and were not intended as instruments for the regulation of labor-management relations." *Kennedy v. Long Island Railroad Co.,* 319 F.2d 366, 372–73 (2d Cir.1963). To assure that the Sherman Act was applied in accordance with its original purpose, Congress enacted the Clayton Act, which, in relevant part, states "[t]he labor of a human being is not a commodity or article of commerce." 15 U.S.C. § 17. Given this statutory limit on the scope of the antitrust laws, Count VI fails to state a claim on which relief can be granted insofar as it alleges a conspiracy to prevent individual plaintiffs from working. *See Tugboat, Inc. v. Mobile Towing Co.,* 534 F.2d 1172, 1176 (5th Cir.1976); *Plumbers & Steamfitters Local 598 v. Morris,* 511 F.Supp. 1298, 1306 (E.D.Wash.1981).

It is now widely accepted that labor organizations are in the business of representing employees and can allege the requisite injury for purposes of standing under the antitrust laws. *See Tugboat, Inc., supra; International Association of Heat & Frost Insulators v. United Contractors Association, Inc.,* 483 F.2d 384, 394 (3d Cir.1973); *Plumbers & Steamfitters Local, supra; ACTWU v. J.P. Stevens & Co.,* 475 F.Supp. 482, 487 (S.D.N.Y.1979). To state a viable claim, however, a labor organization must allege that the conspiracy to interfere with its business had a "monopolistic effect upon competition in the marketplace." *ACTWU, supra* at 490. Although this language could be stretched to cover restraint of competition in the

---

the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger of irreparable loss or damage is immediate, a preliminary injunction may issue: *Provided,* That nothing herein contained shall be construed to entitle any person, firm, corporation, or association, except the United States, to bring suit in equity for injunctive relief against any common carrier subject to the provisions of the Act to regulate commerce, approved February fourth, eighteen hundred and eighty-seven, in respect of any matter subject to the regulation, supervision, or other jurisdiction of the Interstate Commerce Commission. In any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

3. Amended Complaint ¶ 110.

4. Amended Complaint ¶ 115.

marketplace of rival unions, courts have not been receptive to this expansive interpretation of the Sherman Act. *See Amalgamated Meat Cutters v. Wetterau Foods, Inc.,* 597 F.2d 133, 136 (8th Cir.1979); *Plumbers & Steamfitters Local 598, supra* at 1306; *but see International Association of Heat & Frost Insulators, supra* at 396–97. In *ACTWU, supra,* for example, the court found that plaintiff labor organization had standing but dismissed the claim that the union had been restrained in its right to organize and represent employees. In so ruling, the court declared: "The antitrust laws do not furnish a remedy, since ACTWU's allegations, taken separately or in concert, do no more than complain of efforts to impede its activities as a union, entirely unaccompanied by any element of monopolistic effect upon competition in the marketplace." 475 F.Supp. at 490. Despite plaintiffs' conclusory allegation here that defendants intended to restrain them in "the business of representing employees in the railroad industry, *with the object of restraining trade and commerce among the several states,*" they fail to allege the necessary element of an actual adverse impact on the market for goods and services other than the representation of employees. Since the complaint specifically alleges only that defendants injured Local 808 in its ability to conduct its business of organizing and representing railroad employees, an injury not among the evils the antitrust laws were intended to eliminate, Count VI fails to state a claim and must be dismissed.

B. *Count VIII: Violation of RLA, Section 2, Fourth* [5]

The gravamen of Count VIII is that the UTU defendants, by their continuing self-designation as the representative for a minority of trainmen on the railroad, have violated the rights of the majority of trainmen on the P & W to choose one collective bargaining representative for all trainmen. Plaintiffs allege defendants violated Section 2, Fourth of the RLA by negotiating an automatic dues check-off for UTU members in June or July of 1981, when Local 808 was the NMB certified collective bargaining representative for all trainmen on the P & W. Defendants contend the Court lacks subject matter jurisdiction over this claim since the prohibitions in Section 2, Fourth of the RLA reach only carriers and their employees and agents. While they concede there exists no authoritative precedent for holding the UTU liable under the RLA,[6] plaintiffs urge the Court to interpret the RLA liberally "in order to protect the integrity of the Act." [7] Plaintiffs argue that injunctive relief directed only at the P & W defendants would not adequately protect plaintiffs' statutory rights because it could not prevent the UTU defendants from continuing to violate the RLA.

In the amended complaint plaintiffs quote the following portion of Section 2,

---

**5.** 45 U.S.C. § 152, Fourth; this section provides:

Fourth. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter. No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions: *Provided,* That nothing in this chapter shall be construed to prohibit a carrier from permitting an employee, individually, or local representatives of employees from conferring with management during working hours without loss of time, or to prohibit a carrier from furnishing free transportation to its employees while engaged in the business of a labor organization.

**6.** Plaintiffs' Reply Memorandum at 57.

**7.** *Id.* at 58.

Fourth: "Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class for the purposes of this chapter." [8] What the complaint does not show, however, is that Section 2, Fourth goes on to provide:

*No carrier, its officers, or agents shall deny or in any way question the right of its employees to join, organize, or assist in organizing the labor organization of their choice, and it shall be unlawful for any carrier* to interfere in any way with the organization of its employees, or to use the funds of the carrier in maintaining or assisting or contributing to any labor organization, labor representative, or other agency of collective bargaining, or in performing any work therefor, or to influence or coerce employees in an effort to induce them to join or remain or not to join or remain members of any labor organization, or to deduct from the wages of employees any dues, fees, assessments, or other contributions payable to labor organizations, or to collect or to assist in the collection of any such dues, fees, assessments, or other contributions ... (Emphasis added).

In light of this statutory language, the Court must conclude that Congress intended Section 2, Fourth to prohibit only specified activities of *carriers*, such as the P & W, *and their employees and agents*. Since it is not alleged that the UTU is, or has acted as, an agent of the P & W, there is no jurisdictional basis for the claim against the UTU and Count VIII must be dismissed for lack of subject matter jurisdiction.

**8.** Amended Complaint ¶ 131.

**9.** 45 U.S.C. § 152, Second; this section provides:
All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute.

### C. *Count XII: Violation of RLA, Section 2, Fourth*

To the extent that this count is directed at the UTU, it alleges the UTU unlawfully accepted assistance from the P & W by obtaining an automatic dues check-off for its members. Without addressing the lawfulness of the P & W's decision to grant the dues check-off, the reasons that required dismissal of Count VIII apply here with equal force and compel dismissal of Count XII, as against the UTU, for lack of subject matter jurisdiction.

### D. *Count IX: Violation of the RLA, Section 2, Second* [9]

Plaintiffs claim here that the UTU defendants violated Section 2, Second of the RLA by presenting the grievances of UTU members to P & W officials. Section 2, Second provides: "All disputes between a carrier or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute." This mandate is addressed to the designated representatives of carriers and employees and imposes neither duties nor prohibitions on other parties such as the UTU. Accordingly, this count is dismissed for lack of subject matter jurisdiction.[10]

### E. *Count VII: Tortious interference*

With jurisdiction premised on the doctrine of pendent jurisdiction, plaintiffs allege the UTU defendants tortiously interfered with Local 808's contractual relations with the P & W. Inasmuch as the Court

**10.** Even if plaintiffs could maintain this claim against the UTU, they would not be entitled to a preliminary injunction since they demonstrated neither irreparable harm nor serious questions going to the merits. The evidence in support of this claim shows only that the UTU presented grievances on behalf of its members more than a year ago and that the P & W refused to accept any grievances from the UTU.

has dismissed all the federal claims against the UTU, there is no federal cause of action to which Count VII is pendent and, therefore, it must be dismissed. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.")

## II. *Motion to Dismiss by P & W*

### A. *Count I: Violation of RLA, Section 2, First*[11]

■ The gravamen of this claim is that the P & W violated its duty to bargain in good faith for a new collective bargaining agreement.

Defendant P & W has moved to dismiss this count for failure to state a claim upon which relief may be granted under F.R.Civ. Proc. 12(b)(6). The well-pleaded material allegations of the complaint being taken as admitted, *Fine v. City of New York*, 529 F.2d 70, 75 (2d Cir.1975), the Court believes the motion to dismiss should be denied. However, on the hearing on the motion for a preliminary injunction, plaintiffs failed to establish probability of success on the merits. Relying on Section 8 of the Norris-La-Guardia Act (NLA),[12] defendants assert that Local 808 is barred from obtaining injunctive relief because it did not make every reasonable effort to resolve disputed contract issues. The evidence showed and plaintiffs do not deny that they refused voluntary arbitration, but they attack defendants' legal argument as specious in light of the statement by the Supreme Court that the NLA " 'does not deprive the federal courts of jurisdiction to enjoin com-

pliance with various mandates of the Railway Labor Act.' " *Chicago & North Western Railway Co. v. UTU*, 402 U.S. 570, 582, 91 S.Ct. 1731, 1737, 29 L.Ed.2d 187 (1971).

While plaintiffs are correct insofar as they assert that this Court is not entirely lacking in jurisdiction to enforce the RLA, that says nothing with respect to plaintiffs' entitlement to injunctive relief, which depends on whether they have satisfied Section 8 of the NLA. *See UPS v. Local 804, International Brotherhood of Teamsters*, 698 F.2d 100 at 105 (2d Cir.1983); *Local 553, Transport Workers Union v. Eastern Airlines, Inc.*, 695 F.2d 668 at 678–79 (2d Cir.1982). Section 8 of the NLA provides:

> No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any governmental machinery of mediation or voluntary arbitration.

It has long been held that this restriction extends to RLA cases and that a plaintiff in such an action who refuses voluntary arbitration "loses the legal right to have an injunction issued by a federal court or, to put the matter more accurately, it fails to perfect the right to such relief." *Brotherhood of Railroad Trainmen v. Toledo, Peoria & Western Railroad*, 321 U.S. 50, 63, 64 S.Ct. 413, 420, 88 L.Ed. 534 (1944). Though it can be argued that Section 8 should not bar Local 808 from obtaining an injunction since the NLA was intended as a shield for labor organizations and not em-

---

**11.** 45 U.S.C. § 152, First; this section provides:

It shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions, and to settle all disputes, whether arising out of the application of such agreements or otherwise, in order to avoid any interruption to commerce or to the operation of any carrier growing out of any dispute between the carrier and the employees thereof.

**12.** 29 U.S.C. § 108; this statute provides:

No restraining order or injunctive relief shall be granted to any complainant who has failed to comply with any obligation imposed by law which is involved in the labor dispute in question, or who has failed to make every reasonable effort to settle such dispute either by negotiation or with the aid of any available governmental machinery of mediation or voluntary arbitration.

ployers, *see Amalgamated Transit Union v. Byrne,* 568 F.2d 1025, 1037 (3d Cir.1977) (en banc) (Aldisert, J., dissenting), that argument fails to give proper weight to a broad purpose underlying both the NLA and the RLA—namely, "to encourage use of nonjudicial processes of negotiation, mediation and arbitration for the adjustment of labor disputes." *Brotherhood of Railroad Trainmen, supra* 321 U.S. at 58, 64 S.Ct. at 417. To fulfill this purpose, the federal courts must apply Section 8 equally to all parties in labor disputes who seek injunctive relief. Plaintiffs' reliance on *Chicago & North Western Railway Co. v. UTU, supra,* is misplaced; the Supreme Court there held only that Section 4 of the NLA does not divest federal courts of jurisdiction to enjoin violations of the RLA, and it did not reach the question of whether a labor organization must satisfy Section 8 before requesting judicial enforcement of the RLA. In light of the purposes behind the RLA and the NLA, and the holding in *Brotherhood of Railroad Trainmen, supra,* and plaintiffs' rejection of voluntary arbitration, a fact not in dispute, plaintiffs are not entitled to injunctive relief on this claim.

B. *Count II: Violation of RLA, Section 2, Seventh and Section 6.*

■ In this count plaintiffs allege the P & W defendants violated the RLA by unilaterally changing train crew consists by withholding two scheduled cost-of-living allowances, by making changes in the terms and conditions of employment beyond those set forth in the Section 6 notice, and by locking-out plaintiffs on April 24, 1982. Inasmuch as the first two allegations, changing the crew consists and withholding cost-of-living allowances, are not addressed by plaintiffs in any pleadings filed subsequent to the complaint, the Court deems them abandoned. As for the remaining allegations relating to defendants' conduct on April 23–24, 1982, defendants claim that conduct constitutes protected self-help that cannot be enjoined.

■ There is no dispute that on March 24, 1982, the NMB formally notified Local 808 and the P & W that mediation had failed. This notice marked the completion of the statutorily mandated process of major dispute resolution and entitled the parties, after a thirty-day "cooling-off" period, to resort to self-help. *See Brotherhood of Railroad Trainmen v. Jacksonville Terminal Co.,* 394 U.S. 369, 378, 89 S.Ct. 1109, 1115, 22 L.Ed.2d 344 (1969); *Brotherhood of Railway Clerks v. Florida East Coast Railway Co.,* 384 U.S. 238, 244, 86 S.Ct. 1420, 1423, 16 L.Ed.2d 501 (1966); *Brotherhood of Locomotive Engineers v. Baltimore & Ohio Railroad Co.,* 372 U.S. 284, 291, 83 S.Ct. 691, 695, 9 L.Ed.2d 759 (1963); *Delaware & Hudson Railway Co. v. UTU,* 450 F.2d 603, 614 n. 22 (D.C.Cir.1981), *cert. denied,* 403 U.S. 911, 91 S.Ct. 2209, 29 L.Ed.2d 689 (1971). As the Second Circuit recently observed, "Once the parties have exhausted the Act's mediation process … either may resort to self-help by unilaterally changing working conditions or striking, as the case may be." *Local 553, Transport Workers Union v. Eastern Air Lines, Inc., supra* at 668, 674 (2d Cir.1982). Inasmuch as the mandatory cooling-off period expired April 23, 1982, both parties could then resort to self-help and, the P & W was entitled unilaterally to change terms and conditions of employment without giving thirty-days notice. *Brotherhood of Railway Clerks, supra* 384 U.S. at 246, 86 S.Ct. at 1424. A carrier's right to self-help is not boundless, however, and, beyond imposing changes consistent with the Section 6 notice, it is limited to action "reasonably necessary" to continue operations. *Brotherhood of Railway Clerks, supra* at 248–49, 86 S.Ct. at 1425–26.

Therefore, insofar as plaintiffs allege the unilateral changes imposed by the P & W varied from those in the Section 6 notice, and exceeded the bounds of reasonableness, Count II states a claim upon which relief can be granted.

C. *Count III: Violation of RLA Section 2, Second*

■ Section 2, Second of the RLA provides that "[a]ll disputes between a carrier

or carriers and its or their employees shall be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized so to confer, respectively, by the carrier or carriers and by the employees thereof interested in the dispute." Plaintiffs allege the P & W violated this mandate in bypassing the union representatives on April 23, 1982, by unilaterally imposing new terms and conditions of employment. Contrary to plaintiffs' position that the P & W violated Section 2, Second by giving individual notice to trainmen of the terms and conditions of employment that would take effect on April 24, 1982, defendants' action was part and parcel of its right to resort to self-help. Where parties have exhausted statutory dispute resolution procedures, the thirty-day notice provision of Section 6 is inapplicable and the parties can exercise self-help immediately. *Brotherhood of Railway Clerks, supra* at 246, 86 S.Ct. at 1424. In this case, the parties were bound by the collective bargaining agreement only until April 24, 1982, *see* Second Amended Complaint ¶ 13, Local 808 apparently believed that it could resort to self-help following the negotiating impasse, *see* Plaintiffs' Proposed Conclusions of Law ¶ VII 3I, and it is not disputed that ·the parties were both free to exercise their respective rights to self-help after the exhaustion of statutory dispute resolution procedures on April 23, 1982—the end of a thirty-day mandatory "cooling-off period." Accordingly, assuming the truth of the factual allegations, Count III fails to state a claim upon which relief can be granted.

D. *Count IV: Violations of RLA Section 2, Third* [13] *and Fourth*

█ Plaintiffs here allege defendants have engaged in a course of conduct designed to undermine Local 808's status as

the recognized collective bargaining agent for the P & W operating employees by discriminating against and threatening members of Local 808. In support of their motion to dismiss, the P & W defendants advance three arguments: the allegedly wrongful discharges and demotions constitute minor disputes that must be resolved by the adjustment board; plaintiffs lack standing as individuals to claim violation of statutory rights that are collective in nature; and, the statutory provisions upon which plaintiffs rely permit private enforcement, if at all, only in egregious cases of company unionism. After careful consideration of the difficult issues raised by the motion to dismiss, the Court is of the opinion that Count IV should not be dismissed for lack of subject matter jurisdiction.

In a recent Second Circuit decision discussing, *inter alia,* federal court jurisdiction over claims arising under Section 2, Third of the RLA, Judge Meskill observed:

The thread which runs through the [judicial] intervention cases is summarized in *Switchmen's Union v. National Mediation Board,* [320 U.S. 297, 300, 64 S.Ct. 95, 96, 88 L.Ed. 61 (1943)]:

In those cases it was apparent that but for the general jurisdiction of the federal courts there would be no remedy to enforce the statutory commands which Congress has written into the Railway Labor Act. The result would have been that the 'right' of collective bargaining was unsupported by any legal sanction. That would have robbed the Act of its vitality and thwarted its purpose.

*Airline Pilots Association, Inc. v. Texas International Airlines, Inc.,* 656 F.2d 16, 21 (2d Cir.1981). Since the judicial intervention sought by the Airline· Pilots Association would have required the district court

---

**13.** 45 U.S.C. § 152, Third; this section provides:

Representatives, for the purposes of this chapter, shall be designated by the respective parties without interference, influence, or coercion by either party over the designation of representatives by the other; and neither party shall in any way interfere with, influence, or coerce the other in its choice of

representatives. Representatives of employees for the purposes of this chapter need not be persons in the employ of the carrier, and no carrier shall, by interference, influence, or coercion seek in any manner to prevent the designation by its employees as their representatives of those who or which are not employees of the carrier.

to determine if that party was a proper representative of the pilots, Judge Meskill reasoned that intervention was unnecessary and therefore improper because the representational dispute could have been resolved extrajudicially by the National Mediation Board. *Id.* at 22. The approach taken by the *Airline Pilots Association* court is consistent with the analysis given by the Third Circuit to a case, which, like the instant suit, raised claims under Section 2, Third and Fourth. In *International Association of Machinists v. Northwest Airlines, Inc.,* 673 F.2d 700 (3d Cir.1982), the court did not foreclose the possibility of judicial intervention to enforce Section 2, Third and Fourth, *id.* at 709, but it plainly abjured a posture of judicial receptivity to such claims. *Id.* at 709–10.[14]

Applied to this case, the principle of judicial restraint underlying the reasoning in *Airline Pilots Association, supra,* and *International Association of Machinists, supra,* suggests that the Court lacks subject matter jurisdiction over the individual claims presented in Count IV because those claims could be resolved administratively. Assuming *arguendo* that plaintiffs have been disciplined because of their union membership and that the justification offered by the P & W is mere pretext, then in fact the railroad's action would not be valid under the collective bargaining agreement. In light of its familiarity with contractual grievances and its expertise in ruling on the validity of the carrier's actions under the collective bargaining agreement, there is no reason to believe that the railroad adjustment board could not adequately address and resolve a claim of pretextual discipline motivated by anti-union animus. While there is authority suggesting that federal courts have jurisdiction over this type of claim, *Conrad v. Delta Air Lines, Inc.,* 494 F.2d 914, 918 (7th Cir.1974); *Brotherhood of Railroad Trainmen v. Central of Georgia Rwy. Co.,* 305 F.2d 605, 607–09 (5th Cir.1982), this Court finds those opinions unpersuasive in light of

more recent decisions by the Second and Third Circuits. Accordingly, the Court dismisses Count IV for lack of subject matter jurisdiction insofar as it presents individualized claims.

 Despite the conclusion above, the question remains whether the Court has jurisdiction over the claim by Local 808 that the P & W has violated the RLA by attempting to undermine Local 808's representation of the railroad employees. Unlike charges of unlawful discipline, which can be resolved by an existing administrative body, acts of intimidation cannot be remedied by administrative means and, if proved, could establish a jurisdictional basis for judicial intervention. *See International Association of Machinists, supra* at 710. Since the question of jurisdiction turns on a necessarily factual determination on the merits of the union's claim, *id.,* and those facts were hotly contested at the lengthy hearing on the motion for a preliminary injunction, a ruling on the question of jurisdiction is premature and the motion to dismiss must be denied.

### E. Count V: Violation of RLA: Section 2, Fourth

For reasons stated above in relation to Count IV, the Court is of the opinion that it has subject matter jurisdiction over Count V insofar as it raises representational claims. Accordingly, the motion to dismiss by the P & W defendants is denied.

### F. Count VI: Restraint of Trade

For the reasons stated above in dismissing this claim as against the UTU defendants, this count is dismissed as it relates to the P & W defendants for failure to state a claim upon which relief can be granted.

### G. Counts X–CII: Violation of RLA Section 2, Eighth, Ninth and Fourth

These claims were added to plaintiffs' complaint after the P & W defendants filed

---

**14.** It bears note that many of the cases relied upon here by plaintiffs were found inapposite to the issue of subject matter jurisdiction over claims of post-certification misconduct by the Third Circuit. 673 F.2d at 707 n. 6 & 708–09.

their motion to dismiss and are not addressed in the motion; accordingly, the Court need not decide whether it has jurisdiction over the subject matter of these claims or whether they state claims upon which relief can be granted.

### H. Claims against the P & W Company

 Defendants move to dismiss all claims against the P & W Company on the grounds that it is not a proper party defendant. The P & W Company is the parent of the P & W Railroad Company, which is a wholly owned subsidiary. Despite this relationship, the complaint nowhere alleges that the P & W Company committed any unlawful acts. The basis on which plaintiffs would make the P & W Company a defendant here is wholly economic—if plaintiffs prevail on their damage claims the P & W Railroad Company, the subsidiary, may not be able to pay. While it may be true that the parent company is relatively wealthier than its subsidiary, the mere existence of a deeper pocket is not a reason to make the owner of that pocket a party defendant. Accordingly, the motion to dismiss the P & W Company from this action is granted.

### III. Motion for Preliminary Injunction

To obtain preliminary injunctive relief, plaintiffs bear the burden of showing (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Jack Kahn Music Co. v. Baldwin Piano & Organ Co.*, 604 F.2d 755, 758 (2d Cir. 1979).

*Local 553, Transport Workers Union, supra* at 675 n. 5. The *sine qua non* of the relief sought here is irreparable harm, *id.* at 677, which exists "when monetary damages are difficult to ascertain or are inadequate." *Danielson v. Local 275, Labor International Union*, 479 F.2d 1033, 1037

**15.** Plaintiffs' Proposed Findings of Law ¶ IX 1.

(2d Cir.1973). Although plaintiffs have made the conclusory assertion that they "have suffered and are suffering irreparable harm," [15] this proposed conclusion of law is unsupported by proposed findings of fact. In addition, plaintiffs have devoted themselves to establishing probable success on the merits of their claims but have ignored the question of irreparable harm in all of their briefs. Since irreparable harm cannot be presumed to flow inexorably from the alleged violations of the RLA, and it is not the function of the Court to marshal evidence or make legal arguments on behalf of either party when each is adequately represented by skilled counsel, the Court must conclude that plaintiffs have not shown any irreparable harm that would entitle them to the equitable relief they seek. Therefore, without deciding whether, or to what extent, plaintiffs' claims are meritorious, the Court concludes that plaintiffs' motion for a preliminary injunction must be denied.

### CONCLUSION

For the reasons stated, the motions to dismiss are denied as to Counts I and II and granted as to Counts III, V, VI, VII, VIII and IX. The motion for a preliminary injunction is denied on the extant claims.

SO ORDERED.