Lewis O. FERGUSON, Plaintiff,

v.

NORFOLK SOUTHERN
CORPORATION,
Defendant.

Lewis O. FERGUSON, Plaintiff,

v.

Mildred BERRY and Norfolk Southern
Corporation, Defendants.

Lewis O. FERGUSON, Plaintiff,

v.

ROANOKE VALLEY PSYCHIATRIC
CENTER, Walter B. Blair, and Norfolk
Southern Corporation, Defendants.

Nos. Civ. A. 87–0068, Civ. A. 87–0087
and Civ. A. 87–0098.

United States District Court,
W.D. Virginia,
Roanoke Division.

June 30, 1987.

Lewis O. Ferguson, Roanoke, Va., pro se.

William B. Poff, Woods, Rogers & Hazlegrove, Roanoke, Va., for defendants.

## MEMORANDUM OPINION

TURK, Chief Judge.

These three cases have come before the court on defendants' motions to dismiss.[1] All three cases arise out of one series of disputes between the plaintiff and his employer, the Norfolk Southern Corporation. The court finds that all three cases involve minor disputes that fall under the exclusive jurisdiction of the National Railroad Adjustment Board and on that basis will grant summary judgment in favor of the defendants in all three cases.

## BACKGROUND

The plaintiff, Lewis O. Ferguson is a longtime employee of the Norfolk Southern Railroad ("NS"). During the times relevant to these actions, he was a clerical employee at the NS Tariff Bureau in Roanoke, Virginia. Also at those times, he was a member of the Brotherhood of Railway Airline and Steamship Clerks, Freighthandlers Express, and Station Employees ("BRAC"), the collective bargaining agent for NS employees. Additionally, Ferguson served on BRAC's "local protective committee," a position that entailed his reporting violations of work rule violations to BRAC and its local chairman.

In August 1985 the railroad began receiving numerous complaints from employees at the Tariff Bureau. Some of these were charges by Ferguson against his coworkers. The others were complaints against Ferguson by other employees at the Tariff Bureau. The volley of charges and countercharges between Ferguson and his co-workers was repeated so frequently that the railroad police department handled them in one ongoing investigation of personnel within the Tariff Bureau.

The crux of Ferguson's numerous allegations was that his fellow employees were engaged for unknown reasons in a deliberate attempt to harass and annoy him. The specific incidents he described ranged from people tampering with his desk and anonymous threatening phone calls to a man threatening him with a knife. While the record alludes to only one or two specific allegations by Ferguson's co-workers, it indicates that their ongoing concern was Ferguson's repeated interrogation of them to discover the identity of his tormentor. One specific allegation, which is in the record, is that on January 24, 1986 Ferguson threatened to bring a gun to work. Ferguson disputes that allegation. He claims it was the result of a co-worker's misunderstanding of a joke he made about terrorism.

Following the gun incident, on February 7, 1986, railroad police officer F.D. Moorman interviewed Ferguson in the presence of Ferguson's supervisor, Ms. Mildred A. Berry. During the hearing Berry allegedly commented about Ferguson's repeated written complaints about his co-workers. According to Ferguson, she accused him and his wife of lying and making false accusations to NS supervisory personnel.

Concurrent with the dispute between Berry and Ferguson concerning the interview with Moorman, the animosity between Ferguson and his co-workers precipitated a second dispute.

On February 27, 1986, Berry advised Ferguson that she had scheduled him to see Dr. W.B. Blair, a local psychiatrist. Dr. G.W. Ford, the NS Medical Director had arranged for Ferguson and another Tariff Bureau employee to visit Dr. Blair as a result of the ongoing problems between Ferguson and the other man. Ferguson initially refused to consent to the psychological exam. However, on February 7th he was given a release from duty and he voluntarily left work to go to Dr. Blair's office.

At the outset of the appointment, Ferguson handed Dr. Blair a letter stating that he was reporting against his will, that he would not pay for the appointment, and

---

**1.** Pursuant to Rule 12(b)(6) of Federal Rules of Civil Procedure, the court will treat the motions to dismiss as motions for summary judgment under Rule 56.

that he refused to consent to the release of any report of the evaluation. Although Dr. Blair advised Ferguson that he was free to leave, Ferguson agreed to stay because he had been sent there at the order of his employer.

As Dr. Blair commenced to examine Ferguson it became clear that Ferguson would not furnish answers sufficient to serve as the basis for an accurate psychological evaluation. It is disputed whether or not Ferguson's evasiveness was the result of his intentional uncooperativeness. After the brief, unfruitful examination Dr. Blair notified Dr. Ford that as a result of Ferguson's useless responses he was unable to submit to NS a mental status evaluation of Ferguson.

Ferguson's visit with Dr. Blair ended at 12:17 p.m., yet he did not return to his office on that day until 3:00 p.m. When he finally did return, Berry asked him about the delay. Although it is unclear exactly what Ferguson said to her, she interpreted his response as insolent and disrespectful.

On February 18, 1986, pursuant to Rule 14 of the collective bargaining agreement between NS and BRAC, NS served Ferguson with notice of several charges against him: (1) dereliction of duty for failing to return promptly to work on February 7; (2) insubordination for his insolence and failure to respond adequately to Berry's curiosity about his delay and; (3) insubordination for refusing to cooperate with Dr. Blair.

Following an investigation and a hearing, Ferguson was found guilty of insubordination and dereliction of duty. As a disciplinary measure, NS suspended Ferguson from work effective 4:50 p.m. on February 12, 1986 and ending 8:00 a.m. on March 17, 1986. On Ferguson's behalf, BRAC appealed the suspension to Public Law Board 3751, which is convened under the authority of the Railway Labor Act 45 U.S.C. § 153. That case is still under the Board's consideration.

Following a second refusal to submit to an examination by Dr. Blair, NS referred Ferguson to a second psychiatrist, Dr. William D. Clarkson. Ferguson did cooperate with Clarkson. Subsequently, Dr. Clarkson submitted to Dr. Ford an in depth evaluation of Ferguson. He diagnosed Ferguson as exhibiting "[P]ersonality disorder, mixed with passive aggressive and paranoid features." Dr. Clarkson concluded that Ferguson was likely not to be a threat to himself or to his co-workers, but he advised the railroad to let Ferguson transfer to another position away from the employee with which he had the most conflict. About two and a half weeks after Dr. Clarkson submitted his report, Ferguson wrote to Clarkson accusing the doctor of baiting him, misdiagnosing him, and of intentionally misrepresenting his condition in order to make him "look bad."

Case No. 87–68

In the first action, Ferguson sues NS for the incidents surrounding the investigation by the railroad police, the accusations by Berry, and for his suspension following the visit with Dr. Blair. He alleges that those actions were in retaliation for his Union activities and that they constitute a deprivation of his rights without due process of law.

Case No. 87–87

The second case, removed here from state court, arises out of the comments Berry made during the interview with Ferguson and Officer Moorman. Ferguson alleges that Berry's remarks were slanderous under Va.Code § 18.2–416. He asks for damages from NS and Berry to compensate for the suffering and mental distress that the statements caused him.

Case No. 87–98

In the third suit, also removed from state court, Ferguson sues NS, Dr. Blair, and the Roanoke Valley Psychiatric Center ("RVPC"), the place where Dr. Blair leases office space. He alleges that NS had no just cause initially to refer him for psychiatric evaluation and that Dr. Blair lied to NS about his refusal to cooperate during the examination. He claims that these wrongful acts led in turn to his wrongful discipline and suspension. Finally, he accuses Dr. Blair of violating Va.Code § 8.01–413 by failing to provide him with a

copy of a psychological report that he believes Dr. Ford prepared.

## DISCUSSION

The defendants have offered several arguments in support of their motions to dismiss. The one that is most encompassing and that justifies dismissal of all three cases is that Ferguson's cases all involve minor disputes which, pursuant to the Railway Labor Act, 45 U.S.C. §§ 152 *et seq.*, are outside of the district court's jurisdiction.

■ The Railway Labor Act ("RLA") governs labor relations in the railroad industry. As part of its mandate, the RLA directs employers and employees in the railroad industry to resolve most job related disputes without recourse to the courts. 45 U.S.C. §§ 152, 153. All disputes between a railroad and its employees that involve "the interpretation or application of agreements concerning rates of pay, rules, and working conditions" are to be resolved by the National Railroad Adjustment Board ("NRAB.") 42 U.S.C. § 153. These disputes, referred to as minor disputes, are within the NRAB's exclusive jurisdiction. Federal courts are therefore without power to resolve minor disputes. *Andrews v. Louisville & Nashville R.R. Co.,* 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972). Further, NRAB decisions over minor disputes are almost invariably final and may be reviewed or relitigated in courts only under the narrowest of circumstances. *Union Pacific R. Co. v. Sheehan,* 439 U.S. 89, 93–94, 99 S.Ct. 399, 401–402, 58 L.Ed.2d 354 (1978). Unless the NRAB (1) fails to comply with the RLA; (2) fails to confine itself to the bounds of its jurisdiction or; (3) exhibits fraud or corruption, a court is powerless to review issues properly and previously brought before the NRAB. *Id.* at 93, 99 S.Ct. at 402.

■ Ferguson's actions against the railroad for harassment and improper suspension in retaliation for Union activity and in his charges against Dr. Blair and RVPC are minor disputes within the NRAB's exclusive jurisdiction. Ferguson's character-ization of NS's conduct as improper implies the existence, and violation, of certain duties and standards of behavior. The source of these duties and standards is the collective bargaining agreement. "Since the NRAB has exclusive jurisdiction over disputes involving contractual interpretation of collective bargaining agreements between carriers and their employers, it follows that only the [NRAB] can determine the propriety" of NS's conduct. *Choate v. Louisville & Nashville R.R. Co.,* 715 F.2d 369, 371–72 (7th Cir.1983). Although Ferguson argues that NS's anti-union animus and its retaliatory tactics take this case beyond the limits of a contractual minor dispute, in light of the NRAB's familiarity with contractual disputes and its expertise in understanding a carriers duties under a collective bargaining agreement, there is, however, "no reason to believe that the [NRAB] could not adequately address and resolve a claim of pretexual discipline motivated by anti-union animus." *Thacker v. Norfolk & Western Ry. Co.,* No. 84–1166, slip op. at 14 (W.D.Va. July 29, 1985); *quoting Local Union 808, Int'l B'hood of Teamsters v. P & W R.R. Co.,* 576 F.Supp. 693, 703 (D.Conn.1983); *see also, Morris v. Winston–Salem Southbound Ry. Co.,* 813 F.2d 402 (4th Cir.1986).

■ The court is also convinced that the RLA is applicable to the case against Dr. Blair and RVPC, despite Fergguson's contention that they are outside NRAB's jurisdiction because they are not officially connected to the railroad. Ferguson's contact with Blair and RVPC was at the direction of the railroad as part of its investigation of internal departmental unrest. Dr. Blair made the allegedly false statements in the context of an NS investigation and hearing. Thus, the gravamen of the case against Blair and RVPC is the railroad's abuse of investigatory process, a matter substantially covered in the collective bargaining agreement and one within the NRAB's exclusive jurisdiction. *Magnuson v. Burlington Northern, Inc.,* 576 F.2d 1367, 1369–40 (9th Cir.), *cert. denied,* 439 U.S. 930, 99 S.Ct. 318, 58 L.Ed.2d 323 (1978).

■ Finally, Ferguson is barred from litigating the issue of his discipline and suspension here because he is concurrently addressing the same issue in his appeal before the Public Law Board. *Andrews, supra,* 406 U.S. at 325, 92 S.Ct. at 1565. It is therefore clear that Ferguson's right to resort to federal court to vindicate his wrongful discipline claim is circumscribed by the RLA.

■ The RLA also bars Ferguson's suit for defamation against Berry and NS. While defamatory statements are not covered specifically by the collective bargaining agreement between NS and BRAC, the fact that a claim is not expressly addressed by an agreement is immaterial for purposes of coverage by the RLA. *Elgin J & E Ry. v. Burley,* 325 U.S. 711, 723, 65 S.Ct. 1282, 1289, 89 L.Ed. 1886 (1945). Investigations of employee complaints are covered by the NS–BRAC agreement and are normal incidents of the employer-employee relationship. *Majors v. U.S. Air, Inc.,* 525 F.Supp. 853, 857 (D.Md.1981). Any dispute arising out of such an investigation, including a charge of defamation, should fall within the NRAB's exclusive jurisdiction. *See, e.g., Miller v. Norfolk & Western Ry. Co.,* No. 83–3652, slip op. (N.D.Ohio 1984) *Farley v. Hayes,* 112 L.R.R.M. 2298 (S.D. Ill.1982) [1982 WL 2040]; *Majors, supra,* 525 F.Supp. at 853; *Carson v. Southern Ry. Co.,* 494 F.Supp. 1104 (D.S.C.1979). Thus even if Berry did defame Ferguson when she remarked about him during officer Moorman's interview, then that issue can be resolved only by the NRAB. This court, however, is without jurisdiction to address that issue.

## CONCLUSIONS

The actions that Lewis O. Ferguson has brought against NS, Mildred Berry, Walter Blair, M.D., and the Roanoke Valley Psychiatric Center are minor disputes which, under the provisions of the RLA, fall under the exclusive jurisdiction of the NRAB. Because the court is without jurisdictin to hear these claims, it will grant summary judgment in favor of the defendants.

An order consistent with this opinion will be entered on this day.